# Pittsburg, Appellant, v. Sterrett Subdistrict School.

204      635
f 25 SC ²347

*Taxation—Local improvements—Exemption of public property—School district—Acts of February* 12, 1869, *P. L.* 150, *and May* 16, 1891, *P. L.* 75.

Statutes imposing assessments for local improvements are enacted in the exercise of the taxing power of the legislature, and notwithstanding the generality of the enumeration of the property affected, do not apply or relate to property held or used for public purposes by the state, or any of its political subdivisions.

Real estate purchased and held by the board of directors of subschool districts created in the city of Pittsburg by the act of February 12, 1869, is not liable under the Act of May 16, 1891, P. L. 75, for assessments for grading, paving and curbing a street on which such real estate abuts. This is the case because (1) such real estate is public property, and therefore not taxable or assessable for public improvements under existing acts; (2) there are no provisions in the act of May 16, 1891, by which such an assessment can be enforced; and (3) because taxation of any kind imposed upon school property would interfere with and defeat the commonwealth in maintaining the system of education required by the constitution.

Argued Nov. 6, 1902. Appeal, No. 148, Oct. T., 1902, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Nov. T., 1893, M. L. D. No. 19, for defendant non obstante veredicto in case of City of Pittsburg v. Sterrett Subdistrict School. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Scire facias sur municipal lien. Before EVANS, J.

At the trial the jury returned the following verdict:

And now, to wit: March 17, 1902, we, the jurors empaneled in the above entitled case, find for plaintiff for $2,048.41, subject to question of law reserved, to wit: Whether real estate, the property of the subdistrict schools in the city of Pittsburg, is liable to assessment for municipal improvements.

Judgment was subsequently entered for the defendant non obstante veredicto.

*Error assigned* was the judgment of the court.

*William W. Smith*, assistant city solicitor, with him *T. D. Carnahan*, city solicitor, for appellants.—Why should the city

at large be taxed to pay for the improvement of the property of this particular subdistrict? Residents of the city at large are not entitled to any use whatever of this school, but only residents of the Sterrett subdistrict have the right to attend this school. This case is, therefore, entirely different from Erie v. School District, 17 Pa. Superior Ct. 32, relied upon in the court below, because in that case the city and school district were coterminous, and the enforcement of the lien would be only a transfer of public funds from one public pocket to another public pocket.

It is settled in Broad Street, Sewickley M. E. Church's Appeal, 165 Pa. 475, that an assessment for municipal improvements is not taxation, in its general form, but is a special assessment upon property specially benefited. To the same effect are New Castle v. Jackson, 172 Pa. 86, and Philadelphia v. Union Burial Ground Society, 178 Pa. 533, in both of which cases the Broad Street case, supra, is cited and approved.

*Jesse T. Lazear*, with him *Thomas C. Lazear*, and *Charles P. Orr*, for appellee.—The subdistrict public school property is public property. It is a public institution, although under the control of a quasi corporation, and is subject to visitation by the legislature. A subdistrict school is therefore but an agent of the commonwealth, and a quasi corporation for the sole purpose of carrying out the mandates of the constitution: Ford v. Kendall Borough School District, 121 Pa. 543; O'Donnell v. Cass Twp. School District, 133 Pa. 162; Chalfant v. Edwards, 173 Pa. 246; Erie v. School District, 17 Pa. Superior Ct. 33.

Public property is never subject to any manner of taxation in the absence of express legislative authority. No exemption is required: Cooley on Taxation, 130; Elliott on Roads, 403; Erie v. School District, 17 Pa. Superior Ct. 33; County of Erie v. City of Erie, 113 Pa. 360; Poor Directors v. School Directors, 42 Pa. 21; Mayor, etc., of New York v. Brooklyn, 2 L. R. A. 148.

An assessment of this nature is an exercise of the taxing power: McKeesport v. Fidler, 147 Pa. 532; Erie v. School District, 17 Pa. Superior Ct. 33; Sewickley M. E. Church's App., 165 Pa. 475 (478).

This action is a sci. fa. sur municipal lien against a public subdistrict school of the city, and the land described in the writ, together with the school building thereon erected, is used exclusively for public school purposes. Such property is not liable to a lien for a municipal improvement. The action is in rem. The land could not be sold to enforce payment of the judgment and the children deprived of school privileges. Where there can be no execution there can be no judgment: Erie v. School District, 23 Pa. C. C. Rep. 428; Erie v. School District, 17 Pa. Superior Ct. 33; William v. Controllers, 18 Pa. 275; Patterson v. Pa. Reform School, 92 Pa. 229; Ford v. Kendall Boro. School Dist., 121 Pa. 543; Briegel v. Philadelphia, 135 Pa. 451.

In the case of Erie v. School District, 17 Pa. Superior Ct. 33, the proceedings were by lien and sci. fa. thereon, which being unsuccessful, assumpsit was resorted to as a last resort: Erie v. School District, 23 Pa. C. C. Rep. 428.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1903:

There is but a single question in this case and that is whether real estate, purchased and held by the board of directors of subschool districts in the city of Pittsburg, is liable to assessment for grading, paving and curbing a street on which said real estate abuts. The learned trial judge answered the question in the negative and denied the right of the city to recover from a subdistrict the cost of the improvement.

By the Act of February 12, 1869, P. L. 150, the city of Pittsburg was created an independent school district. A central board of education was established having corporate capacity, with certain powers over, and duties relative to, the schools and subdistrict schools of the city. The board is composed of one member elected by the board of directors of each of the subdistricts. It is required among other things to maintain one high school and one or more separate schools for children of color, and authorized to take and hold real estate for these purposes; to assess and, through the city treasurer, collect sufficient taxes to establish and maintain the high school and schools for children of color and for the payment of the teachers of the several subdistrict schools. Each ward is made a subdistrict and two school directors are to be elected annually

therein for a term of three years. The board of directors of a subdistrict is authorized, inter alia, to purchase and hold such real estate and personal property as may be necessary for the establishment and support of the schools within their respective districts, and to dispose of the same; to cause suitable lots of ground to be purchased or rented, and suitable buildings to be erected or rented for schoolhouses, and to supply the same with the proper conveniences and fuel, and are given general supervision over the schools; to levy a special tax to be applied solely to the purchasing or paying for the ground, the building or erection of schoolhouses thereon, the repairing of said houses, and furniture, apparatus and all necessary books and stationery and fuel therefor, and janitor service; to appoint the teachers of the subdistrict schools and to dismiss them at any time for cause, and to suspend or expel from the schools all persons found guilty of incorrigible conduct. The board is required to admit to the school of the subdistrict all persons between the ages of six and twenty-one years, residents of the subdistrict, except persons of color.

In 1891 the Sterrett subdistrict, the appellee, purchased a lot of ground within the subdistrict and erected a school building thereon, which, since its erection, has been used exclusively for school purposes. This property abuts on Linden avenue, a public street of the city, which in 1893 was graded, paved and curbed by the city. Viewers were appointed by the court of common pleas who assessed the property of the subdistrict with $1,336.65, as special benefits, which assessment was reported to, and duly confirmed by, the court. A municipal lien was filed by the city against the property under the Act of May 16, 1891, P. L. 75, and a scire facias thereon was issued to enforce payment of the claim against the premises. An affidavit of defense and plea were filed and no further proceedings were taken on the scire facias. About five years thereafter, the city issued a scire facias to revive and continue the lien and on the trial thereof the court directed a verdict for the plaintiff, subject to the question "whether real estate, the property of the subdistrict schools in the city of Pittsburg, is liable to assessment for municipal improvements." Subsequently, on motion of appellee's counsel, the court entered judgment for the defendant non obstante veredicto, on the ground that the real estate

of the subdistrict was not liable for a municipal claim for a
street improvement, because the property was used exclusively
for school purposes; and held further that this proceeding is
an action in rem and as "it is not pretended that this land could
be sold to satisfy this lien," judgment should not be entered
on the verdict in favor of the plaintiff.

The provisions of the act of 1869, as referred to and quoted
above, indicate sufficiently for the purposes of this case the
powers and duties of the central board of education and of the
board of directors of the respective subdistricts. The system
of education created by the act requires the united action of
the central and subdistrict boards of directors to render it com-
plete and effective. When organized and in operation it is an
efficient means of enforcing article 10, section 1, of the consti-
tution, which provides that "the general assembly shall pro-
vide for the maintenance and support of a thorough and effi-
cient system of public schools, wherein all the children of this
commonwealth, above the age of six years, may be educated."
While the city is the school district, yet the title to the real
estate, necessary for subdistrict school purposes, is taken and
held by the directors of the subdistricts. It is also true that
the real estate in each subdistrict is purchased and paid for by
the money of the subdistrict in which it is located. These
facts, however, do not deprive it of the character of public
property used for school purposes. It is one of the necessary
and indispensable means which the state through the city uses
in carrying out the system of public education commanded by
the constitution of the commonwealth. Each of the subdis-
tricts is charged with the same duty in this respect, and that
the act of 1869 did not impose upon the city the power and
the duty of purchasing and holding the title to the real estate
cannot affect its character as public property, nor deny to the
subdistricts their right to exemption from taxation or munici-
pal assessments to which the city, as a school district, would be
entitled if the title was vested in it. In either case, regardless
of where the title is lodged, the property is taken, held and
used "for the maintenance and support of a thorough and effi-
cient system of public schools." The burden imposed on sub-
districts by the purchase of real estate for school purposes is
equalized among the subdistricts by similar service to be per-

formed by each subdistrict. Substituting "subdistrict" for "municipality" and "district" for "state," the following language of AGNEW, J., in Washington Avenue, 69 Pa. 352, is applicable here: "Nor is this mode of taxation inconsistent with our notions of the right of private property and of the equality of burdens; for each municipality in its turn (sooner or later) by a tax on all of its inhabitants pays only for what it makes and enjoys within its own limits, and thus in the course of time the burden is equalized upon all, as every portion of the state makes its own improvements and enjoys their peculiar benefits."

Regarding the real estate in question as the property of a school district, " a quasi corporation for the sole purpose of administering the commonwealth's system of public education," is it subject to an assessment for benefits received by reason of the improvement of the street on which it abuts? The act of May 16, 1891, under which this lien was filed, provides that whenever there shall be any final assessment made on "any property or properties" to pay for the cost, expenses and damages of any municipal improvements, the property so assessed shall be subject to a lien for the amount of such assessment. The act provides for the enforcement of the lien and the collection of the claim by sale of the real estate on a levari facias issued on the judgment obtained on a scire facias. It will be observed that the terms of the act do not limit its application to private as distinguished from public property. The words employed in the statute are "any property or properties," and they are sufficiently comprehensive, if so intended by the legislature, to include all property, whether held for public use or owned by a private individual. But in construing this legislation and in determining the intention of the legislature in its enactment, we must be guided by the well established rule that "it is always to be assumed that the general language of statutes is made use of with reference to taxable subjects, and the property of municipalities is not in any proper sense taxable. It is therefore by clear implication excluded:" Cooley on Taxation, 131; County of Erie v. City of Erie, 113 Pa. 360. In speaking of the presumption that public property is exempt from taxation, Judge COOLEY (Cooley on Taxation, 130) says: " Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to sup-

pose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for governmental purposes. All such property is taxable, if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demands of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact." In Jones v. Tatham, 20 Pa. 398, LEWIS, J., delivering the opinion of the court, says: " Words of a statute applying to private rights do not affect those of the state. This principle is well established, and is indispensable to the security of the public rights. The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied." In Directors of Poor v. School Directors, 42 Pa. 21, Chief Justice LOWRIE says : " The public is never subject to tax laws, and no portion of it can be without express statute. No exemption law is needed for any public property, held as such." The late Chief Justice GREEN repeated this language with approval in his opinion in County of Erie v. City of Erie, supra. In Endlich on the Interpretation of Statutes, section 161, the author, citing authorities to support the text, says : " The crown is not reached except by express words, or by necessary implication, in any case where it would be ousted of an existing prerogative or interest. It is presumed that the legislature does not intend to deprive the crown of any prerogative, right or property, unless it expresses its intention to do so in explicit terms, or makes the inference irresistible. Where, therefore, the language of the statute is general, and in its wide and natural sense would divest or take

away any prerogative or right, title or interest from the crown, it is construed so as to exclude that effect."

It is contended, however, that an assessment for a local improvement is not taxation in its general form and hence is not subject to the rule that statutes imposing taxation do not apply to or impose a tax upon property held by the state or one of its municipalities unless it is expressly so provided. In support of this position, the learned counsel for the appellant rely upon Sewickley M. E. Church's Appeal, 165 Pa. 475, and two kindred cases decided by this court. The question in those cases, however, was, as the appellant's counsel concede, whether the constitutional exemption from taxation applies to municipal assessments. It was held that it did not apply to such assessments and only relieves from the obligation to pay the ordinary taxes levied for general purposes. There can be but little doubt that such is now the settled rule in this state. It was admitted, however, by Chief Justice STERRETT in Church's Appeal, that these assessments, resting for their final reason, upon special local benefits, are referable to the taxing power, and are, therefore, not improperly recognized as a species of taxation. Such assessments have been recognized as an exercise of the taxing power in numerous other decisions of this court and in the decisions of the courts of other states: Hammett v. Philadelphia, 65 Pa. 146; Washington Ave., supra; Olive Cemetery Company v. Philadelphia, 93 Pa. 129; Erie v. First Universalist Church, 105 Pa. 278; McKeesport Boro. v. Fidler, 147 Pa. 532; Board of Improvement v. School District (Ark.), 35 Am. St. Rep. 108; Worcester County v. Worcester (Mass.), 17 Am. St. Rep. 159. In Olive Cemetery Company v. Philadelphia, supra, STERRETT, J., delivering the opinion, says: "It is conceded, however, that the authority to make and collect such assessments is delegated by the commonwealth. If it does not emanate from the inherent powers of a government to levy and collect taxes, it is difficult to understand whence it comes. The only warrant for delegating such authority must be either in the right of eminent domain or in the taxing power. It cannot be found in the former and hence it must be in the latter." In Erie v. Church, supra, GORDON, J., approvingly repeats this language and adds: "Scarcely less emphatic is the declaration of Mr. Justice SHARSWOOD, in Ham-

mett v. Philadelphia, 65 Pa. 146, that this mode of municipal assessment for the cost of local improvements upon the properties benefited, is a species of taxation." Judge GORDON also says that Washington Avenue, 69 Pa. 352, Craig v. Phila., 89 Pa. 265, and Phila. v. Rule, 93 Pa. 15, are ruled upon the assumption that such assessments are taxes. The same view is entertained in many other states and it is there held that the general language of a statute authorizing assessments for local improvements does not apply to property held by the state or a political subdivision thereof and devoted strictly to public use: City of Clinton v. Henry County (Mo.), 37 Am. St. Rep. 415; Board of Improvement v. School District, supra. In the latter case, HEMINGWAY, J., speaking for the Supreme Court of Arkansas, says: "If it be argued that the reasoning upon which the rule (under which public property is presumed to be exempt) is placed, does not apply to special taxes for local improvements, because the levy would fall upon one public body for the benefit of a smaller one, or because the entire school district would pay the taxes while the small improvement district must bear the loss from the exemption, the answer is that the same is the case with regard to general taxes. Exemption of the state house and other state institutions relieves every taxable subject in the state from the burden of taxation, but it deprives the particular county or school district in which they are situated of the entire county or school tax; and so the exemption of county property from state taxes benefits the county only, and deprives the entire state of revenue; still, in all such cases, it is held that exemption is applied wherever liability is not expressed or necessarily implied. If the disparity of burden and benefit does not prevent the operation of the rule as to general taxes, we see no reason why it should as to special assessments."

These authorities conclusively show that statutes imposing assessments for local improvements are enacted in the exercise of the taxing power of the legislature. They, therefore, notwithstanding the generality of the enumeration of the property affected, do not apply or relate to property held or used for public purposes by the state or any of its political subdivisions. The reasons for this rule given in the authorities cited above are convincing and amply sufficient to sustain it. The imposi-

tion of a tax or assessment by the authority of the state, represented by itself or any subordinate political division thereof, upon property held by another subordinate division and used for public purposes would in effect be a party demanding money and receiving payment from himself. An assessment pays for a public, though a local improvement. It therefore relieves the public from the necessity of contributing to the cost or expense of the improvement. If public property purchased by funds raised by taxation is subjected to assessment for a local public improvement, it is the public paying the public, which clearly discloses the absurdity of the proposition. The fact that the benefit of the exemption would inure to the people of only a portion of the territory which produces the revenue from which the property is purchased cannot affect the right to exemption. As is shown in the authorities cited above, the same objection would be equally effective in preventing public property from being relieved from general taxation. It may also be observed that the other parts of the territory not benefited by the local improvement would in time derive like benefit from similar improvements without the liability for assessment of their property.

The mode provided in the act of 1891 for enforcing the assessment also leads to the conclusion that the legislature did not intend that it should apply to the property of school districts. The statute provides that the collection of the claim shall be by " writ of scire facias, in accordance with the course of the common law," on which a judgment shall be entered for the debt, interest and cost of the lien. A writ of levari facias shall issue on the judgment and by virtue . thereof the sheriff shall sell the property. As the proceeding is statutory it is exclusive and must be pursued in the enforcement of the claim. There is no personal liability against the owner which can be enforced by an ordinary action at law. Here the claim cannot be paid by the school board of the subdistrict as it has no funds with which to make payment. As we have seen by reference to the act of 1869, the subdistrict school boards are authorized to levy a tax solely for the purpose of purchasing school sites, for the erection and repair of school buildings, for the purchase of school apparatus and to pay for fuel and for janitor service. For no other purpose and to meet no other indebtedness can

the board of a subdistrict levy or collect a tax. If, therefore, the claim of the plaintiff in this case is collected, it must be done by a sale of the school property on a levari facias by the sheriff. As said by WILLIAMS, J., in O'Donnell v. Cass Twp. School District, 133 Pa. 162, this would take from it (subdistrict) the schoolhouse, and defeat the very purposes for which the district was organized. For such reason it was held in that case that an execution could not issue on a judgment against a school district created by authority of the act of 1854. In Patterson & Co. v. Pennsylvania Reform School, 92 Pa. 229, it was held that the defendant was "a public corporate body and cannot be proceeded against by levari facias." And in Monaghan v. Philadelphia, 28 Pa. 207, it is said: "It is very clear that none of the property of a municipal corporation, whether real or personal, necessary to the corporation for governmental purposes, could be seized and sold even if the usual process for collecting a judgment could issue against such corporation." In Schaffer v. Cadwallader, 36 Pa. 126, Chief Justice LOWRIE says: "It is essential to the existence of a lien (as of all other legal rights) that it be recognized by law, by being enforced or protected as such. This is a very plain principle, and it refuses to a judgment against a municipal corporation the character of a lien on its land, because such a judgment cannot be executed against the land."

In contemplation of the constitutional provision relative to our public schools and statutory enactments to enforce it, the school districts or subdistricts of the state are the agents of the commonwealth in the administration of its system of public education. They are made quasi corporations for that purpose: Ford v. Kendall Boro. School District, 121 Pa. 543. They, therefore, hold the property as the agent of the state and for the purpose of making its public school system effective. Taxation of any kind whatever imposed upon the property would interfere with and defeat the commonwealth in maintaining the system of education required by the constitution. Such an intention should not be attributed to the legislature in the enactment of either special or general tax laws unless it is manifested by clear and explicit language.

We think it clear, therefore, on reason and authority, that the language used in the act of 1891 does not apply to property

held by the state or any of its political subdivisions for public use. The statute in imposing the burden does not discriminate between private and public property, and does not expressly place it upon public property. The appellee's property is therefore presumptively exempted from the operation of the act, and the lien sought to be enforced here has no statutory authority, which is necessary to its validity, to support it.

The question raised here has been directly adjudicated in some of the states. In Board of Improvement v. School District, supra, the supreme court of Arkansas held that an assessment of public school property for local improvements is not authorized by a statute, which, in general terms, requires the assessment to be upon all real property situate in the district. HEMINGWAY, J., delivering the opinion, holds that public property is exempt from special taxation, and after citing numerous authorities to support his position, says: " It is argued that even if public property is exempt, the exemption does not extend to the property of public school districts, inasmuch as they are not, strictly speaking, municipal corporations, and education is not a governmental function. The constitution provides that the state shall ever maintain free public schools, and in performing this duty it exercises a function strictly public and governmental. It created school districts and imposed upon them in part this duty, and in order to discharge it they own schoolhouses. They have no other duty than to perform for the state this public function, and only that they may do it is the house held. The state may abolish them, take the property, and undertake directly or through other agencies this public function. The means of controlling the property would thereby be changed, but its use would be unchanged; and there is nothing in the policy of the law to exempt the property while held and controlled by the state, which would deny the exemption while held by the state's agent and used in the performance of its duties: Green v. U. S., 9 Wall. 655."

In City of Hartford v. West Middle District, 29 Am. St. Rep. 687, the supreme court of Connecticut holds that land occupied by a schoolhouse and used solely for school purposes cannot be assessed for the laying out of an adjoining street. In support of his conclusion, GRANGER, J., delivering the opinion, says : " How could the defendants, as a school district, be bene-

fited by the laying out of the street? The assessment was undoubtedly made upon the idea that the intrinsic value of the property was increased, but, if that were so as a matter of fact, does it follow that it was increased in value as school district property, bought and used solely for school purposes, and did the district or could it from the nature of things, derive any immediate, direct or special benefit from the laying out of the street? We are unable to see how the district as a corporation could be so benefited or that their property was rendered any more valuable for the purpose for which they used it, and for which they must continue to use it, if not for all time, at least for a very long period."

In the recent case of Witter v. Mission School District, 66 Am. St. Rep. 33, the supreme court of California held that a lot belonging to a school district is not liable for an assessment for street improvements if used for school purposes. The court conceding that there might be exemption from " taxation " where there would not necessarily be exemption from " assessments," put its decision on the ground " that the state is not bound by general words in a statute which would operate to trench upon its sovereign rights, injuriously affect its capacity to perform its functions, or establish a right of action against it."

We are aware that in some jurisdictions it is held that public property is subject to general as well as special taxation, where it is not excepted in the statute imposing the tax. We think, however, the contrary is the better view and that it is supported by reason and the great weight of authority.

In accordance with the views above expressed, we are of opinion that the real estate of the subschool districts of the city of Pittsburg is not subject to an assessment for the cost and expenses of local improvements.

The assignments of error are overruled and the judgment is affirmed.