## Jordan et al. v. Township of Lower Merion

*Aaron S. Swartz, Jr.* and *Victor J. Roberts*, of *High, Dettra & Swartz*, for plaintiffs.

*James Herbert Egan, James M. Brittain* and *John E. Forsythe*, for defendant.

DANNEHOWER, J., August 30, 1938.—The Lower Merion Zoning Ordinance of 1927, the constitutionality of which is admitted, was amended by an ordinance adopted April 20, 1938, by the township commissioners so as to provide as follows:

"Section 1300 . . . and this ordinance shall not apply to any building of the Township of Lower Merion, or extension thereof, or to the use of any premises by said Township if at any time hereafter the Board of Township Commissioners shall, after a public hearing, decide that such building, or extension thereof, or that such use is reasonably necessary for the convenience or welfare of the public."

This amending ordinance is attacked by the present bill in equity of plaintiffs as illegal and unconstitutional on the following three grounds:

1. That it is not a valid exercise of the police power because it bears no reasonable relation to the public health, safety, morals, comfort, or general welfare;

2. That it violates the equal protection clause contained in the Fourteenth Amendment to the Constitution of the United States, in attempting to lodge arbitrary and absolute power in the board of commissioners, with no standard prescribed to guide their action; and

3. That it is not within the statutory authority of the commissioners to enact because it is not in accordance with the terms of the grant of power contained in the enabling Act of June 29, 1923, P. L. 957, and reincorporated in The First Class Township Law of June 24, 1931, P. L. 1206.

Since, in the absence of a grant of power from the legislature, municipalities of this Commonwealth do not possess authority to pass ordinances on the subject matter of zoning: Kneedler v. Borough of Norristown, 100 Pa. 368 (1882); the primary inquiry in the instant case is whether the general scope and purpose of the amending ordinance is within the grant of power contained in The First Class Township Law. This presents for consideration the third ground of attack enumerated above.

Section 3101 of The First Class Township Law provides:

"Section 3101. Grant of Power.—For the purpose of promoting health, safety, morals, or the general welfare of townships, the boards of township commissioners are hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, and percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population and the location and use of building, structures, and land for trade, industry, residence, or other purpose; and may also establish and maintain building lines and set back building lines upon any or all public streets, roads, highways, lanes and alleys."

" 'In the construction of statutes, the terms or language thereof are to be taken and understood according to their ordinary and usual signification, as they are generally understood among mankind, unless it should appear from the context and other parts of the statute to have been intended otherwise, and if so, the intention of the legislature, whatever it may be, ought to prevail' ": Baker et al. v. Kirschnek et al., 317 Pa. 225, 231 (1935).

In Jones v. Tatham, 20 Pa. 398 (1853), where title to land which was claimed by the Commonwealth was questioned, the court said (p. 411) :

"Words of a statute applying to private rights do not affect those of the State. This principle is well established, and is indispensable to the security of the public rights. The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily applied."

Endlich on Interpretation of Statutes (1888) 223, §161, states: "On probably similar ground rests the rule commonly stated in the form that the Crown is not bound by a statute unless named in it. It has been said that the law is prima facie presumed to be made for subjects only, [that 'the general business of the legislative power is to establish laws for individuals, not for the sovereign.'] At all events, the Crown is not reached except by express words, or by necessary implication, in any case where it would be ousted of an existing prerogative or interest (b). It is presumed that the legislature does not intend to deprive the Crown of any prerogative, right or property, unless it expresses its intention to do so in explicit terms, or makes the inference irresistible. Where, therefore, the language of the statute is general, and in its wide and natural sense would divest or take away any prerogative or right, [titles or interests] from the Crown, it is construed so as to exclude that effect". See Pittsburg v. Sterrett Subdistrict School, 204 Pa. 635, 641 (1903).

Applying the foregoing principle to the grant of power contained in the quoted enabling act, it is a necessary conclusion that the township is granted power to enact zoning regulations in the sphere of private rights and has no power to bind the use of public lands of the Commonwealth. See Baker et al. v. Kirschnek et al., supra.

In Commonwealth v. Moir, 199 Pa. 534, 541 (1901), the court said:

"Municipal corporations are agents of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal, or total abolition at its will. They have no vested rights in their offices, their charters, their corporate powers, or even their corporate existence. This is the universal rule of constitutional law, and in no state has it been more clearly expressed and more uniformly applied than in Pennsylvania."

Municipal corporations acting as agents of the State in the performance of subordinate governmental functions or in enterprises authorized by the legislature with a distinct governmental aspect for the public health, safety, or welfare are thus outside the general scope and purpose of the grant of power in the enabling act, which is limited to a delegation of power to enact zoning regulations affecting private rights as distinguished from the rights of the Commonwealth or any of its political subdivisions. See Metzenbaum on The Law of Zoning (1930) 90, and Bassett on Zoning (1936) 212.

The municipal corporation may comply with the zoning regulations enacted by it as a matter of comity. This is precisely the effect of the amendment adopted by the Commissioners of Lower Merion Township on April 20, 1938. By the amendment, the township has in effect enacted that in its use of township land it will comply with the zoning ordinance except in those cases where, after

public hearing, the commissioners decide such comity would be detrimental to the public welfare or necessities.

It follows the amending ordinance under consideration is thus not beyond the statutory authority vested in the township commissioners. The further objections of plaintiffs that: (1) The amending ordinance would not be uniform in effect throughout the zoning district; (2) it allows no appeal from the decision of the commissioners in cases arising thereunder; and (3) it usurps the function delegated by the legislature to the board of adjustment, are all based upon the premise that the exercise by the township of the power delegated to enact zoning regulations is binding upon the township itself—a premise which is unsound under the construction of the enabling act adopted above. As to private rights, the proper subject matter of the zoning regulations, the amending ordinance makes no difference in the matter of the three objections stated.

On the broad question involved, whether a municipality is bound by its own zoning ordinance, the authorities in other States are in conflict. In New York and Michigan the courts have drawn a distinction between the acts of a municipality in the performance of a governmental function carrying out a legislative mandate and those acts which may be deemed municipal or corporate acts. In the former, it is asserted the municipality is executing the legislative mandate related to public duty generally, while in the other it is exercising its private rights as a corporate body. On this distinction zoning ordinances have been held binding on the municipality in the exercise of its proprietary function but not its governmental function. Thus in O'Brien et al. v. Town of Greenburgh et al., 239 App. Div. 555, 268 N. Y. Supp. 173 (1933), where the municipality sought to erect a garbage disposal plant in a zoning residence "A" district, the court held the zoning ordinance which specifically excluded garbage disposal plants in "A" residence districts, in its amended form, was binding upon the mu-

nicipality since it was an exercise of the proprietary function. The court also considered that plaintiffs had acquired vested rights under the zoning ordinance. This decision reversed the trial court, which held the municipality was exercising a governmental function and so was not bound by the zoning ordinance. It may be noted the question of the power of the municipality to exempt municipal land and its uses by amending the zoning ordinance was not raised. In Taber et al. v. City of Benton Harbor, 280 Mich. 522, 274 N. W. 324 (1937), the court held a zoning ordinance of the city prohibiting buildings of over a certain height in certain zones was binding upon the municipality and prevented the erection of a water tower in excess of the prohibited height, since the city, in pursuance of its duty to maintain an adequate water system, was acting in a proprietary function and not a governmental function. Bearing on the instant case is the Michigan court's distinction of City of Cincinnati v. Wegehoft, 119 Ohio St. 136, 162 N. E. 389 (1928), on the ground that in the Ohio case the ordinance specifically excepted the city, while it did not in the case the Michigan court had for consideration.

Of interest bearing on the soundness of the distinction considered is the recent case of Wallerstein et al. v. Westchester Joint Water Works No. 1 et al., 166 Misc. 34, 1 N. Y. Supp. (2d) 111 (1937), where the municipality desired to erect a water tower in a residential district in violation of the existing zoning ordinance. In this case, the New York court, still applying the distinction considered, held this function of the municipality a governmental one and so concluded the municipality was not bound by the zoning ordinance—a result contrary to Taber et al. v. City of Benton Harbor, supra.

In Puhr et al. v. Kansas City et al., 142 Kan. 704, 51 P. (2) 911 (1935), the court held the board of public utilities was not required to comply with the zoning ordinance in the erection of a water tower in a residence district. In this case an act of the legislature created a

board of public utilities to manage and operate the city's water plant. The court said in support of its result (p. 705) :

"While maintenance and operation of a water plant fall on the proprietary, rather than on the governmental side of municipal power, the business has a distinct governmental aspect."

From the consideration of the cases cited it would seem a necessary conclusion that the distinction between a municipality acting in a proprietary function or a municipal function when applied to the binding effect of zoning regulations enacted under the police power of the municipality is not altogether a sound one.

In City of Cincinnati v. Wegehoft, supra, where the city's zoning ordinance exempted the city so far as the erection of its own municipal buildings is concerned from restrictions as to the character of buildings which might be erected in a restricted zone, the court held that a fire engine house could be erected in a restricted district and that such exemption of the municipality did not violate either the State or Federal Constitution.

In C. J. Kubach Co. v. McGuire, etc., 199 Cal. 215, 248 Pac. 676 (1926), the court held a provision of the city charter limiting the height of buildings in a district to 150 feet in the absence of express language to that effect did not restrict the height of buildings erected by the city.

In DePalma et al. v. Town Plan Commission of Greenwich, 123 Conn. 257, 193 Atl. 868 (1937), where a town zoning ordinance was amended so as to change a district from a class "C" residential zone to an industrial zone permitting a garbage and refuse incineration plant, the court held the reclassification of the district was a constitutional exercise of power. The question of the exemption of municipal property from the zoning ordinance was not raised.

In City of Miami Beach et al. v. State ex rel., 128 Fla. 750, 175 So. 537 (1937), the municipal zoning ordinance

was amended so as to prohibit private schools in a multiple family district, while it permitted public schools. The court held the restriction against private schools unconstitutional because it was arbitrary and unreasonable and had no relation to the public safety, health, morals, comfort or welfare. This case is one in which a property owner challenged the constitutionality of a restriction on her land under the zoning ordinance. In the instant case, plaintiffs do not attack the amending ordinance on the usual ground that it deprives them as owners of the right to use their land for a purpose otherwise lawful, but because it provides for an exemption of municipal land uses from the zoning ordinance. In the Florida case the exemption of municipal land from the restrictions of the zoning ordinance was not considered or raised.

It is well settled that a municipal legislative act which purports to be an exercise of police power, as any zoning ordinance does, must bear a reasonable relation to the public health, safety, morals or general welfare in order to qualify as a valid exercise of that power: Nectow v. City of Cambridge et al., 277 U. S. 183 (1928) ; White's Appeal, 287 Pa. 259 (1926) ; Taylor v. Haverford Twp., 299 Pa. 402 (1930).

In the instant case, plaintiffs attack the amended ordinance as an invalid exercise of police power because of the distinction which it makes between uses of property by the municipality and uses by private owners. This distinction, it is asserted, is clearly unreasonable and arbitrary, and has no relation to the proper objects of the police power.

Plaintiffs strongly rely upon White's Appeal, supra, as establishing this principle and cite the language of Chief Justice Kephart at page 266:

"There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled

for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper." And at page 268:

"The application and consequence of this ordinance is a gross discrimination in that it does not bear alike on all persons living within the same territory. Regulations which do not operate on all alike cannot be justified under the police power."

White's Appeal ruled the set-back line provision of the zoning ordinance then considered was unconstitutional. It is a case where the otherwise lawful use of an individual's land was prohibited. The language cited clearly deals with "unreasonable intermeddling with the private ownership of property." The amended ordinance in the instant case places no new restriction on any private property, but upon compliance therewith exempts municipal uses of property.

It is significant to note that in none of the cases cited in the briefs or disclosed by an independent examination has a court ever held unconstitutional as an invalid exercise of police power an ordinance which exempts municipal uses of its land from the terms of the municipal zoning ordinance. In O'Brien et al. v. Town of Greenburgh et al., supra, the zoning ordinance prohibited a disposal plant and there was no exemption of municipal uses of land. Here the New York court expressly ruled upon the "zoning regulations in their present unamended form" (p. 560). In Taber et al. v. City of Benton Harbor, supra, as heretofore noted, there was no exemption of municipal land and the Michigan court expressly distinguished City of Cincinnati v. Wegehoft, supra, the Ohio case, upon that very ground—namely, that the Cincinnati ordinance did exempt the municipality. In large part, the remaining cases cited by plaintiffs are cases involving the validity of restrictions upon the land of private owners. They do not consider the validity of the exemption here

considered. In such classification is City of Miami Beach et al. v. State ex rel., supra, where the Florida court did not pass upon any exemption of municipal property.

In Huebner et ux. v. Philadelphia Saving Fund Society et al., 127 Pa. Superior Ct. 28 (1937), the court held that property owners may challenge not only zoning restrictions on their own land but also changes in zoning classifications of adjoining property, when the change made is contrary to public health, safety, morals, and welfare and does not operate on all alike in an established residential district. Here again, however, the change in zoning regulations was held invalid because it did not operate alike on all private persons. The rights of the municipality were not involved in the decision.

Considering the scope of the amending ordinance in its present form, there are reasons of public necessity in relation to the public health, morals, safety and welfare which justify the exemption of municipal land uses from compliance with the terms of the zoning ordinance. In its general scope the said amending ordinance is not an improper exercise of the police power.

Individuals and the municipality do not stand in the same relation to the objects of zoning regulations. A public body charged with the care of the public safety, health, morals and welfare does not need the same restraint upon its action as an individual. Where this is so, the distinction made between the uses of land by municipalities and by individuals or private persons is a valid and constitutional one: Perley et al. v. State of North Carolina, 249 U. S. 510 (1919).

The remaining contention of plaintiffs that the amending ordinance considered violates the equal protection clause contained in the fourteenth amendment to the Constitution of the United States in attempting to lodge arbitrary and absolute power in the board of commissioners with no standard prescribed to guide their action is also without merit.

As applied to zoning regulations this guaranty strikes down ordinances which place within the power of the commissioners or board or council the right to deny building permits or display favoritism between private persons by granting consent to one and denying another so that under similar circumstances the board exercises an arbitrary and uncontrolled power depriving citizens of the equal protection of the laws. All the cases cited by plaintiff thus affect the rights of individuals or private persons. In Yick Wo v. Hopkins, Sheriff, 118 U. S. 356, 357 (1886), the ordinance provided that it should be unlawful for any person to engage in the laundry business "without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone." Taylor v. Moore, 303 Pa. 469, condemned an ordinance which furnished no means by which the property owner might determine the character of the building which might be erected in a residential district or commercial district, but left it to zoning officials without the guidance of any standard. In Commonwealth v. Atlas, 244 Mass. 78, 138 N. E. 243 (1923), section 148 of the ordinance provided that it should be the duty of the commissioners to approve or reject plans, a regulation which established no general rule to guide landowners in selecting materials or design or to govern the decree of the commissioners. In Keavey v. Randall, etc., et al., 1 N. J. Misc. 311, 122 Atl. 379, the ordinance required the consent of council to change a building to a garage, and was held discriminatory and not applicable to all persons alike. In State ex rel. v. Town of Ripley, 95 W. Va. 521, 121 S. E. 725 (1924), the ordinance granted to council the right to grant or withhold permission to private persons to erect buildings. In Weicker Transfer & Storage Co. v. Council of The City and County of Denver et al., 75 Colo. 475, 226 Pac. 857 (1924), the court held invalid an ordinance which permitted a permit to issue for a warehouse in an unrestricted district unless council decided such building was against the public health and

safety, which the council did. In Board of Trustees of Town of Bloomfield et al. v. Bayne, 206 Ky. 68, 266 S. W. 885 (1924), a city ordinance requiring a permit for building was held void because it prescribed no standard with which citizens could comply or by which the discretion of those invested with power to grant or withhold the permit could be controlled. In Bultman Mortuary Service, Inc., v. City of New Orleans et al., 174 La. 360, 140 So. 503 (1923), the provision in the zoning ordinance prohibited mortuary establishments except upon express permission of council and prescribed no standard for granting or refusing the permits, and so was held to violate the equal protection clause. In Roman Catholic Archbishop of Diocese of Oregon v. Baker et al., 140 Ore. 600, 15 P. (2d) 391 (1932), the zoning ordinance provided for a residential district and authorized the erection therein of private schools on condition that council after notice and public hearing first approve the location as not detrimental or injurious to the character of the district or to public health, peace, and safety of the zone, and was held invalid as giving council arbitrary power to decide on the location of private schools in residential districts.

As noted, none of these cases involves the question of whether municipal land may be exempted from the terms of the zoning ordinance. While zoning ordinances must under the equal protection clause operate equally on all private persons, this does not prohibit in a proper case the distinction between private persons and municipalities: Perley et al. v. State of North Carolina, supra. In this connection, it may be noted that private persons do not obtain vested rights under a zoning ordinance and that such an ordinance may properly be amended from time to time in furtherance of proper police objects: Reichelderfer et al. v. Quinn et al., 287 U. S. 315 (1932).

For the foregoing reasons, it follows the amended ordinance considered does not deprive any of the plaintiffs of the equal protection of the laws.

In the light of previous discussion, from the facts found there are drawn the following

*Conclusions of law*

1. The ordinance adopted by the Lower Merion Township Commissioners on April 20, 1938, as an amendment to the Lower Merion Township Zoning Ordinance of 1927, is a valid exercise of the police power and has a reasonable relation to the public health, safety, and general welfare.

2. It does not violate the equal protection clause contained in the fourteenth amendment to the Constitution of the United States by lodging arbitrary and absolute power in the board of commissioners with respect to the rights of private persons with no standard prescribed to guide the action of the board.

3. It is within the statutory authority of the commissioners to enact and is in accordance with the terms of the grant of power contained in the enabling Act of 1923, and reincorporated in The First Class Township Law of 1931.

4. The bill in equity should be dismissed.

5. Costs should be paid by plaintiffs.

And now, August 30, 1938, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

The prothonotary will enter the following

*Decree nisi*

1. The bill in equity is dismissed at the cost of plaintiffs.

2. The prothonotary is further ordered and directed to give counsel in the case notice as required by the Rules of Equity Practice, that unless exceptions are filed within 10 days of this date, the decree entered above nisi, will become the final decree as of course.