## Petition of School District of Pittsburgh

*Nicholas R. Criss* and *J. C. McIlwain,* for petitioners.
*William Alvah Stewart, Jr.,* and *Walter P. Smart,*
for defendants.

SMITH, J., November 22, 1940.—This case comes
before the court upon a petition by the School District

of Pittsburgh to compromise county, city, and school district tax claims under the provisions of the Act of May 21, 1937, P. L. 787, 72 PS §5878-a, b, c, d.

The facts taken from the petition filed by the school district and admitted by the County of Allegheny and the City of Pittsburgh at the time of the argument follow:

The School District of Pittsburgh at a sheriff's sale for delinquent school taxes purchased title to a certain lot and dwelling in the 18th ward of the City of Pittsburgh for costs amounting to $83.30. The sheriff's deed therefor was duly acknowledged June 11, 1927, and recorded in deed book vol. 2351, p. 154.

The school district rented the property at a rental of $15 per month, with the provision in the lease that the tenant would make certain repairs. Up to the time of filing the petition the school district had collected on account of rent $60. The failure of the tenant to make payment of full rental is attributed in the petition to the fact that the tenant's family has been, and was up until the filing of the petition, on relief.

Under the provisions of the Act of May 11, 1939, P. L. 117, 24 PS §672a, the school district accepted, subject to the court's approval, a proposition of one Klages to purchase the real estate for $1,000.

The following tax claims were then presented:

(1) City of Pittsburgh, tax claims for the years 1917 to 1928, inclusive . . . . . . $650.70
(2) School District of Pittsburgh, tax claims for the years 1917 to 1928, inclusive . . . . . . . . . . . . . . . . . . . . . . 540.07
(3) County of Allegheny, tax claims for the years 1933 to 1940, inclusive . . . 113.28

The county taxes for the years 1933 to 1940, inclusive, were levied during the time when the said property was owned by the School District of Pittsburgh. The county insists that these taxes should share proportionately in any tax compromise. The school

district rejects that claim on the ground that any attempt on the part of the county to levy taxes against the property while it is held by the school district is unconstitutional and beyond the power of the County of Allegheny.

With the view taken by the school district the City of Pittsburgh, through its counsel, expressed sympathy and concurrence.

Article IX, sec. 1, of the Constitution of Pennsylvania provides:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes. . . ."

Article IX, sec. 2, of the Constitution of Pennsylvania provides:

"All laws exempting property from taxation, other than the property above enumerated shall be void."

The General Assembly, pursuant to the constitutional authority outlined, adopted The General County Assessment Law of May 22, 1933, P. L. 853, 72 PS §5020-106, which amends, revises, and consolidates the law relating to taxation for local purposes. It provides, inter alia, in article II, sec. 201, as follows:

"The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate: (a) All real estate, to wit: Houses, lands, lots of ground . . . and all other real estate not exempt by law from taxation. (b) All salaries. . . . (c) All other things and persons now taxable by the laws of this Commonwealth for county, city and school purposes."

Section 204 of the same act, 72 PS §5020-204, sets forth the properties which shall be exempt from taxation, as follows:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: . . . (g) *All other public property used for public purposes,* with the ground thereto annexed and necessary for the occupancy and enjoyment of the same; . . ." (Italics supplied.)

The General County Assessment Law of 1933 has been held by the Supreme Court to be in strict compliance with the constitutional direction: Commonwealth v. Dauphin County et al., 335 Pa. 177.

It can no longer be argued that the property of municipalities when used for governmental purposes is subject to taxation by other municipal subdivisions. The courts have long recognized and sustained the constitutional provision which prohibits the taxation of municipal property used for governmental purposes: Directors of the Poor of Schuylkill County v. School Directors of North Manheim Twp., 42 Pa. 21; Pittsburg v. Sterrett Subdistrict School, 204 Pa. 635; Commonwealth v. Philadelphia Rapid Transit Co., 287 Pa. 70; Commonwealth v. Pure Oil Co. et al., 303 Pa. 112.

It has generally been held that where a municipal corporation holds property which is not devoted to, or used, or intended to be used for public purposes, but is held for private purposes alone, such property is not exempt from the operation of the general statutory provisions provided for the taxation of property, but, that on the contrary it is subject to be taxed in the same manner as the property of any individual: 4 Dillon on Municipal Corporations (5th ed.) p. 2433; Commonwealth v. Philadelphia Rapid Transit Co., supra; 3 A. L. R. 1442; Rupp, Trustee, etc., v. Levin, 44 Dauph. 313.

The question in the instant case baldly stated, therefore, is this:

"Was the School District of Pittsburgh, in holding and renting property acquired by it at sheriff's sale for unpaid school taxes, holding and using that which had

become public property by such sale 'for public purposes'."

It is argued on behalf of the school district that it is being used for public purposes, and it is argued on behalf of the county that, even though the property may have been acquired by the school district for public purposes, when the property is rented to a private individual for private use for a rental accruing to the school district, as of that date the property in the hands of the school district loses its public character and can no longer be construed to have been used for public purposes.

The mere fact that revenue is derived from the property, or that it is leased for private use, does not necessarily preclude the concurrent existence of a public use by a municipality. This principle is recognized in Commonwealth, etc., v. Dauphin County et al., 335 Pa. 177, in an opinion by the then Chief Justice Kephart, who said (p. 183):

"Generally, the question whether public property is being used for a public or private purpose under Article IX is resolved by determining whether the particular property is held for governmental or proprietary reasons. Such an inquiry cannot be controlled by the *criteria* existing years ago. The old landmarks cannot be our exclusive guides, for our social panorama has been extended along broad lines, calling for the institution of new and different relationships between government and members of the general public. The category of governmental functions has been constantly enlarged with new governmental operations to meet changing conditions. Proprietary functions have also increased with the times. . . .

"The fact that revenue is derived from the property or that it is leased for private use does not preclude the existence of a public use by the Commonwealth. This Court recently held in *Dornan v. Phila. Housing Authority et al.*, 331 Pa. 209, 228, that despite the rental of

publicly owned property to private individuals, the exemption of such property from taxation was valid because of the predominant public purpose of slum clearance." And on p. 182:

"It is objected that the Constitution forbids the grant of immunity as to the property involved because the premises are partially occupied by tenants for private commercial purposes. Even assuming that the constitutional restriction of Article IX be applicable to property owned by the State, it does not follow that there has been a violation. Section I of that Article permits the exemption of public property used for public purposes, and the Act of 1933, as well as Section 17 of the Retirement Act, carries this into effect. Notwithstanding its rental to commercial enterprises, the real estate is in fact being used for a public purpose, that is, it is part of the fund of the State Employees' Retirement System. Even if owned outright by the State, the revenues therefrom could only be devoted to public purposes under the Constitution. So long as the use of the property by the State is public there can be no constitutional violation."

The definition of public use it would thus seem to appear has been changing in accordance with changing economic and social conditions, requiring an ever greater and widening scope of governmental activity. This has been recognized again by the Supreme Court in Dornan v. Philadelphia Housing Authority et al., 331 Pa. 209, which said (p. 221):

". . . judicial interpretation of 'public use' has not been circumscribed in our State by mere legalistic formulas or philological standards. On the contrary, definition has been left, as indeed it must be, to the varying circumstances and situations which arise, with special reference to the social and economic background of the period in which the particular problem presents itself for consideration. Moreover, views as to what constitutes a public use necessarily vary with

changing conceptions of the scope and functions of government, so that to-day there are familiar examples of such use which formerly would not have been so considered. As governmental activities increase with the growing complexity and integration of society, the concept of 'public use' naturally expands in proportion."

The Municipal Lien Act of May 16, 1923, P. L. 207, 53 PS §2021, provides a system of procedure for the collection of taxes. Section 31 of that act provides:

"Any county, municipality, township, or school district, being a claimant, shall have the right, and is hereby empowered, to bid and become the purchaser of the property at such sale; and while the said property, so purchased, is held and owned by either a county or a municipality, township, or school district, it shall not be subject to tax claims, unless it be redeemed by the former owner or other person having the right to redeem, as provided by law. If, however, a county, municipality, township, or school district shall become the purchaser at said sale, the former owner or other person, desiring to redeem, shall pay all taxes and municipal claims accrued and chargeable against the property prior to the sale thereof, together with the costs and interest thereon, and also all taxes and claims, whether filed or not, which would have accrued and become chargeable against the property had the same been purchased at the sale by some party other than the county, city or other municipal division."

The important language of this section as giving evidence of a legislative intent with regard to cases similar to that one now under discussion is as follows:

". . . while the said property, so purchased [as in the instant case by a municipal subdivision at sheriff's sale], is held and owned by either a county or a municipality, township, or school district, it shall not be subject to tax claims . . ."

It would seem, therefore, that sound logic and reason require us to say that the School District of the

City of Pittsburgh is at the present time holding the property in question for a public use for the following reasons:

1. As a tax-levying body the School District of Pittsburgh is duty bound to the taxpaying public: (*a*) To levy uniform taxes; (*b*) to exert an effort to effect collection of the same; and (*c*) in the event of failure to secure payment of taxes to exercise the legal means outlined by the legislature to acquire, as a result of sheriff's sale based upon municipal tax lien, (1) the moneys necessary to pay the taxes in the event the property is bid in by some competitive bidder, or (2) title to and possession of the property as security for the unpaid tax claims.

2. The property having once been acquired by a municipal subdivision as a result of sheriff's sale on a tax lien, public interest requires that the municipal subdivision in the interest of efficient management and economy do one of two things: (1) Sell the property at the first opportunity for a fair price (which is the situation in the present case) ; (2) pending opportunity for such sale at a fair price, to secure by the rental of said property whatever revenue can be had as a means of reducing the accumulated unpaid tax claim which was the cause of the original sheriff's sale, and as a further means of substituting what would have been the current tax revenue had the property not been so acquired.

3. The property having once been acquired by a municipal subdivision, any revenue received from the rental thereof in excess of (*a*) an amount necessary to liquidate the accumulated tax claim prior to the sheriff's sale, or (*b*) the equivalent of current tax revenue yield barred by the removal of the property from the tax column, would, in any event, be deposited in and become part of the general fund of the municipal subdivision from which it could be appropriated only by proper legal action for a public purpose.

4. The property having once been acquired by a municipal subdivision at sheriff's sale, to permit its taxation by any other municipal subdivision would be to create an anomalous situation whereby one tax body (in this case the school district) would be levying a tax upon the taxpayers within its territorial confines to pay a tax levied by another municipal subdivision (in this case the County of Allegheny), in lieu of and as a substitute for the obligation of a private property owner in a territory not coextensive with the territory of the title-holding municipal subdivision, and for purposes not identical with those of the title-holding municipal subdivision. In other words, it would require the School District of Pittsburgh to levy a tax, part of which was to be devoted to the building of county roads, the maintenance of county parks, the maintenance of the county airport, and all of the other legal functions of the County of Allegheny, an authority which the school district does not have and could not undertake. It would require the school district to levy a tax within its territorial confines of money to be spent beyond its territorial limits for purposes distinctly beyond the authority of the school district.

5. The property having once been acquired by a municipal subdivision at sheriff's sale, to permit it to be taxed by another municipal subdivision would create an anomalous situation that in the event the taxes were unpaid the only alternative left to the second municipal subdivision would be to perfect a tax lien and have a second sheriff's sale of property record title to which was held by the first municipal subdivision. This would create an endless confusion.

It is no argument against the sound logic of the principle here announced that in this particular case the money which it is sought to distribute is money realized from the sale of this particular property.

In view of these conclusions an order will be entered directing the compromising of tax claims by the pay-

ment of the school district and city tax claims and the disallowing of the county tax claim.

It is no argument against these conclusions, or the principle involved, that municipal subdivisions having acquired property at sheriff's sale may hold them an unreasonable length of time, thus withdrawing them from the tax column. Such a tendency, if any should develop, could speedily and easily be corrected by proper legislative action fixing a limit on the time such property could be held by a municipal subdivision before it would be required to sell the same at private or public sale.

### Order

And now, November 22, 1940, this petition having been presented in open court, upon full consideration of oral arguments and brief of the legal questions involved, it is ordered, adjudged, and decreed that the tax claims be compromised, pursuant to the provisions of the Act of May 21, 1937, P. L. 787, by allowing and authorizing payment of the following tax claims:

1—School District of Pittsburgh, tax claims for the years 1917 to 1928, inclusive. $540.07

2—City of Pittsburgh, tax claims for the years 1917 to 1928, inclusive....... $650.70

and disallowing and denying the following claim:

County of Allegheny, tax claims for the years 1933 to 1940, inclusive....... $113.28