# Lower Merion Township *v.* Becker, Appellant.

*Sewers—Townships of the first class—Ordinance penalty—Acts of April* 28, 1899, *P. L.* 104, *May* 24, 1901, *P. L.* 294 *and April* 19, 1905, *P. L.* 221.

An ordinance of a township of the first class imposing a penalty of $50.00 upon a landowner for failure to connect his house with a township sewer, after notice, is a reasonable ordinance, and the penalty may be recovered by the township if there is no evidence that the township commissioners have abused their discretion in requiring the connection with the sewer to be made.

Argued Dec. 10, 1909. Appeal, No. 147, Oct. T., 1909, by defendant, from judgment of C. P. Montgomery Co., March T., 1908, No. 33, on verdict for plaintiff in case of Lower Merion Township v. Henry Becker. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from judgment of justice of the peace.

SWARTZ, P. J., filed the following opinion:

After hearing the evidence we instructed the jury to render a verdict in favor of the plaintiff township.

Lower Merion is a township of the first class. The act providing for the classification of townships, passed April 28, 1899, P. L. 104, gave the township commissioners the power to establish a system of sewers and to require connection to be made with such sewers when necessary to the public health. The Act of May 24, 1901, P. L. 294, amended this provision by declaring, "From time to time to establish and construct a system of sewers and drainage as far as practicable along and within the lines of such of the public roads of the township as may to the commissioners seem advisable, and to permit, and when necessary for public health, to require adjoining and adjacent property owners to connect with and use the same."

The Act of April 19, 1905, P. L. 221, empowered the com-

missioners to prescribe fines and penalties, not exceeding $50.00 in any instance, for the violation of township ordinances, to be collected by suit in the name of the township, as debts in like amount may be sued for under existing laws.

In the years 1903 and 1904, the township constructed a system of sewers to carry off the domestic drainage. An ordinance of the township was duly passed, in 1903, making it the duty of every owner of land abutting on the street in which a sewer is laid, to connect with said sewer all buildings on his land requiring drainage, if situated within 200 feet of the sewer.

The defendant is the owner of two properties in said township, one fronting on Montgomery avenue, in the village of Bryn Mawr; the other on Lancaster avenue in the village of Ardmore. There is a dwelling house on each tract or lot, less than 100 feet from the sewer in the abutting highway. Each house has domestic drainage from the water-closets, bathtubs and kitchen sinks.

The commissioners enacted an ordinance prescribing a penalty of $50.00 on any property owner who should fail to connect his property with sewer, after sixty days' notice. On December 12, 1906, the commissioners caused notices to be served on the defendant requiring him to connect his house drainage with the sewers along his properties. A copy of the ordinance of August 1, 1906, accompanied the notice. This ordinance apprised the defendant that the penalty of $50.00 would follow if no connection was made.

The defendant, with others, was notified that a meeting would be held at the commissioners' office, of all persons who were requested to connect with the sewer. This meeting was held in June, 1907, to enable the persons in default to show cause, if any they had, why the connections should not be made. The defendant declined to appear.

On September 4, 1907, the commissioners met and by resolution determined that in their judgment, it was necessary for the public health that the defendant's buildings should be connected with the sewers. The township solicitor was instructed to proceed against the defendant for the collection

of the penalty prescribed by the ordinance of August 1, 1906. This order applied to each case where the notice was given. Suit was not brought until November 21, 1907. Again the defendant did not appear to make any defense. No complaint is made as to the regularity of the proceedings. The defendant applied to the court for an appeal and in his application for the allowance of the appeal sets forth reasons that should have been presented to the justice at the hearing. If the facts alleged constituted a defense, the justice should have passed upon them. The appeal was improvidently allowed, so far as any issue of fact arises.

At the trial of the case before the court and jury, the plaintiff township showed that the defendant's properties abutted on the principal highways of the township, that the properties were situated, the one, in the village of Bryn Mawr, the other in the village of Ardmore. Lower Merion township is thickly populated, especially so in and about Bryn Mawr and Ardmore. The properties are urban and the residents seek these neighborhoods for homes with healthful surroundings. Practically all the residents along these principal thoroughfares connected their house drainage with the sewers provided by the township. The defendant runs his house drainage into cesspools and at times pumps the contents therefrom to water his garden or lawns. The houses along these highways are numerous, although some of the owners have grounds of considerable extent and these suburban homes are the admiration of visitors from our county and other distant parts. One of the defendant's properties contains about seven acres, but this is not agricultural ground. The land is far too expensive to be used for that purpose. The sewage from his house is just as objectionable to the health of his neighbors as the sewage of any house along the street, if allowed to percolate from the cesspools. If there is no necessity for the defendant's connection then all the property owners along the highways have no use for the sewers, for they can all discharge their drainage into cesspools. The legislature recognized the necessity when it provided for sewer systems in townships of the first class. The people in Lower Merion recognized the

necessity when they incurred the big expense of constructing these sewers and connecting with them. House sewage is a dangerous element in all thickly settled communities. It is the duty of every municipality to make police regulations to protect the public health, and private property rights are held subject to such reasonable regulations. The authorities are not compelled to wait until a nuisance, per se, is established upon the property of an urban resident. It is their duty to formulate regulations that will prevent such an occurrence. The resident who would have the benefits of the surroundings in Bryn Mawr must conform to the necessary regulations that make the neighborhood so desirable. If it be said that we are going beyond the evidence submitted, we answer that there is enough testimony before us to draw the conclusions we have indicated. The conditions are not special to Bryn Mawr and Ardmore but they apply to every community in a first-class township where there are large villages and closely built-up sections used for suburban homes.

The sole question before us, is, whether the court or jury can say, that under the conditions established and uncontradicted, the commissioners were in error when they determined under their judgment and discretion, that it was necessary for the public health that the defendant should connect his buildings with the sewer provided by the township.

We must bear in mind that we are not dealing with an arbitrary action of the township commissioners. They have legislative authority for all that they required the defendant to do. The legislature determined that sewers were necessary in townships of the first class, otherwise it would not have provided for their construction. It also declared that in certain instances, it might be necessary to compel owners of houses to make connections. It vested in the commissioners the right to determine when such necessity arose, and provided the penalty by which the ordinance of the commissioners should be enforced. Even if the ordinance requiring all owners, within 200 feet of the sewer to make connections is too drastic, the defendant cannot complain, for it was not

enforced against him until he was afforded a hearing and until the commissioners considered his property specifically and determined that the connection was necessary for the public health.

The ordinance, as interpreted by the commissioners, is certainly reasonable. It was not only the right of the commissioners, but their duty to enforce the connection if the public health, in their judgment, demanded it.

We allowed the defendant to show that the discretion vested in the commissioners was abused when they required him to connect with the sewers. He failed to show any abuse of discretion. On the contrary, all that he submitted, in our opinion, strengthened the judgment of the commissioners.

In Fisher v. Harrisburg, 2 Grant, 291, the court said, "Where the municipal legislature has authority to act, it must be governed, not by our, but by its own discretion; and we shall not be hasty in convicting them of being unreasonable in the exercise of it." Again, in Phila. v. Brabender, 201 Pa. 574, the court say, "The limitations of the powers conferred upon municipal corporations are, that they must be exercised in a reasonable, lawful, and constitutional manner. If their limitations are not transgressed courts cannot interfere with the ordinances of the municipality, for to the mayor and council must be left a reasonable discretion, and for the proper and wholesome exercise thereof, they are accountable not to the courts, but to the people:" O'Maley v. Freeport, 96 Pa. 24; Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355.

Courts will give a liberal construction to health and sanitary regulations of a municipality. "One of the chief purposes for the institution of municipal government is the conservation of the public health and safety. No more important obligation is confided to municipal corporations. The nature of the ordinances they shall adopt for this purpose is largely a matter within the discretion of the local authorities. Unless they are clearly unreasonable and arbitrary, or demonstrably violative of some constitutional provision intended to protect the liberty of the individual or property rights, they will be sustained:" McQuillin on Municipal Ordi-

nances, p. 681. If it be said that the action of the commissioners interferes with the property rights of the defendant, we answer every man holds his property subject to the police power—a power in the exercise of which a man's property may even be taken away from him. The police power is founded upon the maxim, "so use your own property as not to injure the rights of another." Private interests must be subservient to the general interest of the community.

The Act of our legislature approved May 21, 1901, P. L. 265, empowered the authorities of any borough to compel the owners of properties abutting on a public sewer to make connection with such sewer. There is no proviso in the act that the municipal authorities must first determine whether the public health demands such connection. An act similar to this was held valid in Commonwealth v. Roberts, 155 Mass. 281. The act of 1901 shows the trend of public opinion. It is a declaration by the legislature that house sewage is a menace to the public health and should be discharged into a public sewer, whether the abutting owner approves or disapproves of such action. If the vesting of an unrestricted power in the municipality to compel all abutting owners to connect with a sewer is not violative of the rights of property, then a power which cannot be exercised without a hearing of the owner and without a deliberative judgment of the commissioners that the public health demands such connection, cannot be disturbed unless there is evidence that the exercise of the power was attended with fraud, misconduct, or abuse of discretion.

It is said the jury should have determined whether the property of the defendant was in such condition as to require connection for the protection of the public health. There were no facts in dispute. If the jury must review the judgment of the commissioners in every case, then the jury may find that in one case the connection is necessary, and the next jury, in an exactly similar case, may say there is no necessity for a connection. There would be no uniformity in the operations of the sewer system, and the commissioners would be at a loss in determining whether there should or

should not be a connection in a given case. The standard of necessity would naturally shift with each successive jury. What is a reasonable exercise of the police power is a matter for the court: Kneedler v. Norristown, 100 Pa. 368. Under our constitutional system the judiciary determines what are the subjects and objects upon which the police power is to be exercised and the reasonableness of that exercised: McQuillin on Municipal Ordinances, p. 668. Even the court is confined to the inquiry whether the local government has kept within the limits that binds its jurisdiction as they are defined by the constitution and the laws of the state but, subject to these restrictions, the local government may determine what is best calculated to promote the security, the comfort and convenience of the inhabitants: Livingston y. Wolf, 136 Pa. 519.

We repeat that the plaintiff township does not attempt to enforce the ordinance literally or in its severest terms. It did not arbitrarily compel all abutters to connect with the sewers. It determined, after hearing and deliberation, that it was necessary for the public health that the defendant should make the connections. This was a direction in strict compliance with the Act of assembly of May 24, 1901, P. L. 294, which says, "the commissioners shall permit connections and where necessary for public health, require adjoining and adjacent property owners to connect with and use the sewers."

Who was to determine whether the connection was necessary for the public health? Not the legislature, but the commissioners to whom the question was referred. How can the court say that the maintenance of three cesspools on the defendant's lot is not a menace to public health? Especially so, where the defendant admits that at times the contents of the three pools are pumped upon the surface of his lot.

We think no good cause was shown for the allowance of the appeal, and when the appeal reached the common pleas; no cause was shown to set aside the judgment of the commissioners, or the judgment of the justice who imposed the penalty.

210  LOWER MERION TWP. *v.* BECKER, Appellant.

Opinion of Court below—Opinion of the Court.    [42 Pa. Superior Ct.

And now, June 7, 1909, the motion for judgment non obstante veredicto is overruled, and it is ordered that judgment be entered upon the verdict of the jury.

*Error assigned* was in directing a verdict of $100 for the plaintiff.

*W. Horace Hepburn, Jr.*, with him *Franklin L. Wright*, for appellant.—The ordinance is invalid: Lower Merion Twp. v. Postal Telegraph Cable Co., 25 Pa. Superior Ct. 306; Philadelphia v. Scott, 81 Pa. 80; Philadelphia v. Provident Life & Trust Co., 132 Pa. 224; Com. v. Yost, 11 Pa. Superior Ct. 323; Blucher v. Com., 103 Pa. 528; Com. v. Ketner, 92 Pa. 372; Com. v. Standard Oil Co., 101 Pa. 119; see also Philadelphia v. Costello, 17 Pa. Superior Ct. 339.

Two cases in Pennsylvania have gone so far as to say that the municipal authorities ipso facto cannot declare a thing to be a nuisance unless it was actually a nuisance itself: Pittsburg v. Keech, 21 Pa. Superior Ct. 548; Bryan v. Chester, 212 Pa. 259.

*Rowland Evans*, township solicitor, for appellee, cited: Livingston v. Wolf, 136 Pa. 519; Fisher v. Harrisburg, 2 Grant, 291; Com. v. Roberts, 155 Mass. 281 (29 N. E. Repr. 522); Nicherson v. Boston, 131 Mass. 306; Fertilizing Co. v. Hyde Park, 97 U. S. 659; Com. v. Jackson, 34 Pa. Superior Ct. 174.

OPINION BY BEAVER, J., March 3, 1910:

The opinion of the court below, overruling the motion for judgment non obstante veredicto, is its own vindication. It deals so fully and so convincingly with the real questions involved in the case that it is not necessary for us to enter into details, anticipating its publication in full in the report of the case.

The Act of April 28, 1899, P. L. 104, entitled, "An act to provide for the classification of the townships of the commonwealth, with respect to their population, into two classes,

and to prescribe the form of government for townships of each class," provides in its seventh section that: "All corporate power, authority and franchise of the township (of the first class) shall be vested in and exercised by the Board of Township Commissioners; and the said board shall have particularly the following powers: . . . . 3rd. To establish a system of sewers and drainage, and to require connection to be made with such sewers when necessary for the public health, and to provide for the cost of the construction, maintenance and repair of such sewers, in whole or in part, by an equitable assessment on the properties benefited thereby, in such manner as may be prescribed by ordinance, for which assessments municipal liens may be filed in the court of common pleas of the proper county, on which proceedings shall be had as provided by existing laws. And the board shall also have power to enter into contracts with any adjoining municipality, and also with any person or corporation, for the carrying off of the sewage from the limits of the township. 4th. To make regulations respecting pig pens, slaughter houses, manure pits, drains, cesspools and manufactories that are offensive, to abate nuisances prejudicial to public health and public safety, and to collect the cost of such abatement from any person who may be responsible for having created the nuisance. Also to prohibit or regulate the running at large of animals."

This act was amended by the Act of May 24, 1901, P. L. 294, in the third paragraph of sec. 7, so as to read: "3rd. From time to time to establish and construct a system of sewers and drainage, locating the same as far as practicable along and within the lines of such of the public roads of the township as may to the commissioners seem advisable, and to permit and, where necessary for the public health, to require adjoining and adjacent property owners to connect with and use the same; all persons, so connecting, paying in addition to the cost of making such connection, such monthly or annual rate as shall be prescribed by ordinance, and which shall constitute until paid a lien against the property so connecting with such system, and the amount thereof may be

recovered by due process of law. Where it shall be reasonably impracticable, in the judgment of the commissioners, in any part of such system to carry such sewers or drains along the lines of public roads, it shall be lawful for the commissioners to locate and construct so much of the same as may be necessary through private lands."

The Act of April 19, 1905, P. L. 221, amended the ninth clause of the seventh section of the Act of April 8, 1899, P. L. 104, as follows: "Ninth. To prescribe fines and penalties, not exceeding fifty dollars in any instance, for the violation of township ordinances, which fines and penalties may be collected by suit, to be brought in the name of the township, before any justice of the peace or magistrate, in like manner as debts of like amount may be sued for by existing laws."

No attack, as we understand it, is made upon the constitutionality of the act of 1899 classifying townships. Indeed the principle of Wheeler v. Phila., 77 Pa. 338, has become so thoroughly imbedded in the statutes and decisions of the commonwealth that it would be useless to raise the question regarding the constitutionality of reasonable classification at this day.

The appellant seems to misconceive the real significance of the question involved. In his argument he says: "It can readily be seen, from the statement of the question involved, that the proposition on which the appeal is based, and the question raised in this case, is, whether or not the Township of Lower Merion had a right to impose upon a property owner a fine of fifty dollars, regardless of the question as to whether or not his house was a nuisance." The appellant's view is entirely too narrow. The question removed by appeal to the court of common pleas was not whether or not the defendant had committed a nuisance, but whether or not he had connected with the sewer established by the township authorities and which they had distinct authority to establish under the third paragraph of the seventh section of the Act of April 28, 1899, P. L. 104. The appellant quotes the fourth paragraph of this section as if the power and authority of the com-

missioners of the township had been exercised under its provisions instead of those of the third, amended by the act of 1901. The rights and duties conferred and imposed upon the commissioners under both of these paragraphs come clearly within the general police power of the state, the exercise of which is properly vested in municipal authorities. There is no attack upon the ordinances passed by the commissioners providing for sewers on the ground of their unreasonableness.

"The principle that matters of merely local concern should be left to the control of the people to be affected, is recognized and acted upon in our system of government. To this end cities and boroughs have their legislative as well as their administrative officers, and the municipal legislature may make laws in regard to all subjects of a municipal character, and enforce them by appropriate penalties. The local government must keep within the limits that bound its jurisdiction as they are defined by the constitution and laws of the state; but, subject to these restrictions, it may determine what is best calculated to promote the security, the comfort and the convenience of the inhabitants:" Livingston v. Wolf, 136 Pa. 519.

The court, in its opinion discharging the rule for judgment, well says: "The ordinance, as interpreted by the commissioners, is certainly reasonable. It was not only the right of the commissioners, but their duty to enforce the connection if the public health, in their judgment, demanded it. We allowed the defendant to show that the discretion vested in the commissioners was abused when they required him to connect with the sewers. He failed to show any abuse of discretion. On the contrary, all that he submitted, in our opinion, strengthened the judgment of the commissioners."

The question as to whether or not the defendant's property, in the condition in which it was maintained, was itself a nuisance, as we understand it, did not arise. It was a question as to whether or not the defendant complied with the ordinance in regard to the connection of his premises with the public sewer, and as to his failure to do this there was no denial.

As already intimated, the opinion of the court below fully covers everything essential to the proper disposition of the case and, in our judgment, requires no further comment

Judgment affirmed.