Southwest Delaware County Municipal Authority,
Appellant, *v.* Aston Township
(et al., Appellant).

Argued January 20, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph W. deFuria,* with him *deFuria, Larkin & deFuria,* for plaintiff.

*Malcolm B. Petrikin,* for defendants.

OPINION BY MR. JUSTICE JONES, March 17, 1964:

Southwest Delaware County Municipal Authority[1] (Sewer Authority), on March 1, 1961, completed the construction of a sewer system in Aston Township (Township), Delaware County. Prior to the date,

---

[1] Created under the provisions of the Municipality Authorities Act of 1945, Act of May 2, P. L. 382, 53 P.S. §301 et seq.

528

the Township, by ordinance,[2] had required that the owners of improved property in the Township adjoining or adjacent to any accessible public sewer system must connect therewith. To pay the construction and maintenance costs of the sewer system, the Sewer Authority, by resolution, provided that assessments be made, on a front foot rule basis, against properties benefited by the sewer construction and also provided for the imposition of connection charges and sewer rentals.

Adjoining and adjacent to the new sewer system, the Township owns property to be used for a municipal building and other municipal purposes; the Aston Township School District Authority (School Authority), owns property which it leases to Penn-Delco Union School District (School District), upon which the School District operates an elementary school; Penn-Delco Union School District Authority (School Authority), owns property which it leases to the School District upon which the School District operates a junior-senior high school.

The Sewer Authority called upon the Township, the School Authorities and the School District (a) to pay their share of the sewer assessments and (b) to connect with the sewer system paying the necessary connection charges and sewer rentals. The Township *now* takes the position that it will pay the assessments and connect with the sewer system paying the necessary connection charges and sewer rentals. The junior-senior high school is connected with the sewer system but the elementary school,—which, admittedly, has "adequate" on-the-site sewage disposal—, is not so con-

---

2 Ordinance No. 214, §1401, adopted March 4, 1959. It is stipulated that this ordinance "was adopted by the Township Commissioners, who deemed it necessary for the public health, and that the said Township of Aston deemed it necessary for the public health that the said [elementary school] connect to the said sewer system."

nected. The School Authorities and the School District maintain that they are exempt from the payment of any sewer assessments and that they do not have to connect with the sewer system or pay connection charges and sewer rentals.

The Sewer Authority instituted declaratory judgment proceedings in the Court of Common Pleas of Delaware County against the Township, the School Authorities and the School District. The court below held that, while the School Authorities and the School District are exempt from payment of the sewer assessments, they must connect their schools to the sewer system and pay the necessary connection charges and sewer rentals. From the former portion of this judgment the Sewer Authority has appealed (No. 22 January Term 1964) and from the latter part of this judgment the School Authorities and the School District have appealed (No. 29 January Term 1964).

These appeals present two principal issues: (1) is property used for public school purposes immune from the assessment of benefits arising from the construction of a sewer system? (2) is such school property required to connect with the accessible public sewer system and pay the necessary connection charges and sewer rentals?

## Immunity From Sewer System Assessments

This Court, in *Pittsburg v. Sterrett Subdistrict School,* 204 Pa. 635, 54 A. 463 (1903), held that real estate purchased and used for public school purposes was not liable for assessments for local improvements because: (1) such real estate was public property and, therefore, not taxable or assessable for public improvements under the then existing statutes; (2) there were no statutory provisions by which such an assessment could be enforced; (3) taxation of any kind imposed on school property would interfere with and

defeat the Commonwealth in maintaining the constitutionally required public school system.

The Sewer Authority dubs *Pittsburg v. Sterrett* a "strange" case claiming its holding is contrary to decisions of this Court, before and after *Sterrett,* and that the exemption of public school property applies only to taxes of a general nature and not to assessments. The pre-1900 cases[3] cited by the Sewer Authority to support this proposition are inapposite; they relate only to the validity of taxes to pay the costs of constructing public buildings and bridges, taxes which were laid by the legislature on the benefited communities alone. No case is cited in which this Court has even questioned the reasoning or holding of *Pittsburg v. Sterrett,* supra. Mr. Justice MESTREZAT'S opinion in *Pittsburg v. Sterrett,* carefully reasoned, is replete with authorities from this and other jurisdictions. The Sewer Authority's contention that an assessment for local improvements differs from general taxation may well be conceded,[4] but the proposition that such assessments are an exercise of the taxing power is supported by Justice MESTREZAT with numerous decisions of this Court and with decisions of sister state courts (e.g., *Hammett v. Philadelphia,* 65 Pa. 146; *Washington Avenue,* 69 Pa. 352; *Olive Cemetery Company v. Philadelphia,* 93 Pa. 129; *Erie v. First Universalist Church,* 105 Pa. 278; *McKeesport Boro. v. Fidler,* 147 Pa. 532).[5] "These authorities conclusively show that statutes imposing assessments for local improvements are enacted in the exercise of the taxing power of the legislature.

---

[3] *Kirby v. Shaw,* 19 Pa. 258 (1852); *Philadelphia v. Field,* 58 Pa. 320 (1868); *Lea v. Bumm,* 83 Pa. 237 (1877).

[4] For example: *Manheim Twp. Supervisors v. Workman,* 350 Pa. 168, 172; *City of Philadelphia v. Union Burial Ground Society,* 178 Pa. 533; *Erie School District Appeal,* 155 Pa. Superior Ct. 564.

[5] See, also: *In re Vacation of Centre Street,* 115 Pa. 247, 253.

They, therefore, notwithstanding the generality of the enumeration of the property affected, do not apply or relate to property held or used for public purposes by the state or any of its political subdivisions. The reasons for this rule given in the authorities cited above are convincing and amply sufficient to sustain it. The imposition of a tax or assessment by the authority of the state, represented by itself or any subordinate political division thereof, upon property held by another subordinate division and used for public purposes would in effect be a party demanding money and receiving payment from himself. An assessment pays for a public, though a local improvement. It therefore relieves the public from the necessity of contributing to the cost or expense of the improvement. If public property purchased by funds raised by taxation is subjected to assessment for a local public improvement, it is the public paying the public, which clearly discloses the absurdity of the proposition." *Pittsburg v. Sterrett,* supra, pages 643, 644. Nor, we may add, does the fact that the Sewer Authority financed construction of the sewer system by a bond issue alter the force of the above reasoning for the public eventually foots the bill and there is little point in adding a bookkeeping expense to its burdens.

However, reliance need not rest solely on *Pittsburg v. Sterrett,* supra; the immunity of these public school properties from assessments for local improvements rests upon the present statutory law. Unlike property owned by a charity wherein the charity has the burden of proving its property is exempt from taxation, property owned by a municipality and devoted exclusively to public purposes is immune from any form of taxation or assessments unless a statute clearly and unequivocally expresses the legislative will that such property shall not be immune: *Robb v. Philadelphia,* 25 Pa. Superior Ct. 343, 346; *Wilkinsburg Boro. v. School District,* 298

Pa. 193, 197, 148 A. 77; *Com. v. Pure Oil Co.,* 303 Pa. 112, 117, 154 A. 307; 90 A.L.R. 1137 et seq. In *Robb,* the Court said (p. 346) : "Property belonging to the state and its municipalities, and which is held for governmental purposes, is presumed to be. exempt, and is not included in any designation of property to be taxed, however sweeping, unless the statute authorizing the tax expressly so provides".

It is well settled that *in the absence of a statute to the contrary,* public property used for public purposes is exempt from taxation and from assessments for improvements and no express exemption law is needed: *Dornan v. Philadelphia Housing Authority,* 331 Pa. 209, 228, 200 A. 834; *Directors of the Poor v. School Directors,* 42 Pa. 21; *County of Erie v. City of Erie,* 113 Pa. 360; *Philadelphia v. Barber,* 160 Pa. 123, 128, 28 A. 644; *Pittsburg v. Sterrett Subdistrict School,* supra; *Com. v. Pure Oil Co.,* supra.

The Sewer Authority relies upon the exemption clause of the Municipal Claim and Lien Act of 1923 (Act of May 16, 1923, P. L. 207, §5, as amended, 53 P.S. §7108) (Lien Act), as statutory authority for the imposition of these sewer assessments. That clause reads as follows: "All real estate . . ., other than property owned by the State or the United States, shall be subject to all tax and municipal claims herein provided for, except that all property owned by any . . . municipality [defined to include all Municipal Authorities] . . . and institutions of purely public charity, shall not be subject to . . . municipal claims on property, by law, exempt from taxation *except for . . . sewer claims and sewer connections. . . ."* (Emphasis supplied). While we cannot be hasty in imputing the immunity of the sovereign to its agent or instrumentality, i.e., a school authority or school district *(Homestead Borough v. Defense Plant Corporation,* 356 Pa. 500, 505, 52 A. 2d 581), nevertheless we must be most cautious when

asked to construe an exemption clause in a procedural statute as the vehicle chosen by the legislature to impose a liability upon the agent of the sovereign. The Legislature, within the limitations of the Constitution, determines what property shall be subject to taxation and assessments and what shall be immune *(Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County,* 335 Pa. 177, 180, 6 A. 2d 870), and if the Lien Act can be interpreted to expressly impose the obligation herein asserted against the School District and School Authorities, that is the end of the matter. However, the difficulty with the Sewer Authority's contention, based on the exemption clause of the Lien Act, is that we are asked to infer that the School District and School Authorities, are made liable for sewer assessments because of an exception to an exception to an exception.

A straightforward analysis of this exemption clause leads to the conclusion that the clause was intended to exempt the claimant municipality from doing a vain thing, i.e., from placing a lien on a property which is not subject to the obligation asserted by the lien. Where a municipality or an Authority is engaged in a proprietary, as opposed to a governmental, function, its immunity from assessment is by no means automatic *(Homestead Boro. v. Defense Plant Corp.,* supra), and charities, exempt from ordinary taxation, are not exempt from assessments for local improvements *(Philadelphia v. Union Burial Ground Society,* supra, footnote 4). The provisions of the exemption clause, may well be, therefore, declaratory of the law as to lienability of municipalities (in their proprietary capacity) and charities. Even though the clause can be read so as to raise an inference that municipalities and charities are in the same category as regards assessability for certain specified local improvements, considerations of public policy require us to hesitate before so reading

the clause lest we fall into the trap of supposing that public bodies (in their governmental capacity) can be subjected to such an obligation *by implication*. Merely because charities and municipalities are associated in the same breath in the exemption clause of the Lien Act will not serve to identify them as identical twins in the eyes of the law.

The time honored presumption that property which belongs to a municipal subdivision and used for governmental purposes is exempt from taxation and assessment for local improvements can only be overcome by express statutory authority to the contrary and such statutory authority must demonstrate *clearly* and *unequivocally* the legislative intent to remove such exemption. Despite the dictum in *Wilkinsburg Boro. v. School District*, 298 Pa. 193, 199, 148 A. 77, that the Lien Act grants the right to assess school districts for sewers (p. 199), we are in considerable doubt that, even as amended,[6] the Lien Act evidences the requisite legislative intent to accomplish that result.

However, assuming, arguendo, that the Lien Act does furnish the requisite statutory authority to remove a school district's exemption from assessments for certain specified local improvements, we must consider the impact thereon of two later statutes, the Municipality Authorities Act of 1945,[7] [Authorities Act], and the Public School Code of 1949 [School Code].[8]

Section 15 of the Authorities Act (53 P.S. §318), provides: ". ... since such Authorities will be performing essential governmental functions in effectuating [certain stated purposes], such Authorities shall not be required to pay any taxes or assessments upon any property acquired or used by them for such pur-

---

[6] Act of April 17, 1945, P. L. 248, 53. P.S. §7101.

[7] Act of May 2, 1945, P. L. 382, §1 et seq., 53 P.S. §301. et seq.

[8] Act of March 10, 1949, P. L. 30, §101 et seq., 24 P.S. §1-101 et seq.

poses. . . ." Section 776 of the School Code (March 10, 1949, P. L. 30, §776, 24 P.S. §7-776) provides: "All school property owned by any school district, real and personal, that is occupied and used by any school district for public school, recreation, or any other purposes provided for by this act, shall be, and hereby is, made exempt from every kind of State, county, city, borough, township, or other tax, as well as from all costs or expenses for paving, curbing, sidewalks, sewers, or other municipal improvements. . . ." The School Code specifically provides that it shall not be construed to repeal the Lien Act (24 P.S. §1-103), while the Authorities Act is silent as to its effect on such statute.

The Sewer Authority contends that the School Code does not exempt the school properties presently involved from an assessment for sewer benefits because: (1) such statute applies only to "property owned by any school district" and the instant properties are owned not by a "school district" but by school authorities, which are separate and distinct entities; (2) the exemption provision of the School Code was repealed by the Lien Act. We recognize that a School Authority and a School District are separate and distinct entites (*Com. ex rel. McCreary v. Major*, 343 Pa. 355, 22 A. 2d 686) and that the instant properties, titled in the name of the respective School Authorities, are simply under lease to the School District. This contention as to the title of the school properties assumes, of course, that, if the School Code's exemption clause is inapplicable because the properties are not "owned" by the School District, the properties are liable for these sewer assessments because the Authorities Act's exemption clause is inapplicable, an assumption which is incorrect. The Sewer Authority would have us ignore the realities of the relationship between a school district and the school authority which the former, alone or with others, creates. An authority is a municipal cor-

poration, entitled to the same immunities, rights and powers of other municipal corporations and "[s]chool authorities are created to perform some of the same functions which school districts are authorized to perform" and "the same considerations of public policy should apply to an authority as to a school district": *Emporium Area Joint School Authority v. Anundson Construction and Building Supply Co.*, 191 Pa. Superior Ct. 372, 377, 156 A. 2d 554, reversed on other grounds, 402 Pa. 81, 166 A. 2d 269. A school authority acts as an alter ego of a school district to undertake public school projects which the school district, by reason of its debt limitations, cannot undertake. Such title to said projects as the school authority takes is primarily to secure the sources which made possible financing of the school project and such title is held until the school authority's obligations have been repaid or assumed by the school district (Authorities Act, supra, §18, as amended, 53 P.S. §321(B)) or the school authority terminates (Authorities Act, supra, §14, as amended, 53 P.S. §317). See: *Detweiler v. Hatfield Borough School District*, 376 Pa. 555, 561, 562, 104 A. 2d 110. Moreover, if, by reason of absence of registered title in these properties in the School District, the School Code's exemption clause is not applicable and if School Authorities are not exempt from these assessments, then another reality of the situation must be faced, i.e., the School Authorities must pass on to the School District the cost of such assessments (Authorities Act, supra, §4, 53 P.S. §306), a result which clearly and completely negatives the expressed legislative intent in the School Code that properties devoted to public school purposes be exempt from such assessments. The fact that such properties are nominally titled for security purposes in the School Authorities should not thwart the unequivocal mandate of the legislature set forth in the School Code.

The Sewer Authority's second contention is based upon the application of the Statutory Construction Act of 1937,[9] particularly §§573, 581, and 583. By the application of this Act, the Sewer Authority reaches the result that the exemption clause of the Lien Act is still in effect and nullifies and emasculates the provisions both of the School Code and the Authorities Act, although both such statutes are later in enactment.

In our view, the Statutory Construction Act is inapplicable and resort thereto distorts and perverts the clearly expressed legislative intent of both the School Code and the Authorities Act. In *Commonwealth ex rel. Cartwright v. Cartwright,* 350 Pa. 638, 645, 40 A. 2d 30, this Court approved the following rule: " *'When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. . . ':* 25 R.C.L. Sec. 217, p. 961." (Emphasis supplied) Such rule has been consistently followed: *Lancaster City Ordinance Case,* 383 Pa. 471, 474, 119 A. 2d 307; *Biddle Appeal,* 390 Pa. 460, 466, 135 A. 2d 915; *Eck v. Williamsport School District,* 197 Pa. Superior Ct. 591, 596, 180 A. 2d 79. In fact, the Statutory Construction Act itself (§51, 46 P.S. §551) provides that the "object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature".

An examination of the exemption clause of the School Code indicates clearly and unquestionably the legislative intent, i.e., that property used for public school purposes shall be exempt from both taxation and municipal assessments. The language of this exemption clause can have no other meaning but, if resort be had to statutory rules of construction, a result

---

[9] Act of May 28, 1937, P. L. 1019, 46 P.S. §501 et seq.

is reached completely at variance with such meaning so unequivocally spelled out in the exemption clause. The Sewer Authority's contention, while ingenious, cannot defeat a legislative intent so clearly enunciated.

As to the impact of the Authorities Act, the Sewer Authority's contentions are two-fold: (1) since the Authorities Act's exemption clause was enacted subsequent to the amendments to the Lien Act and, since §19 of the Authorities Act provides that, insofar as the provisions of the Act "are the same as those of existing laws are intended as a continuation of such laws and not as new enactments", the exemption clause —identical to that in the Authorities Act of 1935— does not supersede the exemption clause of the Lien Act; (2) the exemption clause in the Authorities Act grants immunity only from taxation. As to the first contention, the answer is the same as that given as to the School Code of 1949, i.e., the legislative intent being clear resort need not be had to any rule of statutory construction. Moreover, a reading of the exemption clause of this statute indicates clearly that the legislature intended to grant to Municipal Authorities exemption not only from taxation but also from assessments for local improvements and to construe "assessments", as the Sewer Authority urges, as a phase of the process of taxation clearly nullifies the manifest legislative intent.

We are of the opinion that the only proper interpretation of the Authorities Act and the School Code of 1949 is that the legislature intended that school properties, such as presently involved, be free of any assessment for local improvements. To adopt the contention of the Sewer Authority would thwart the clear purpose of the legislature.

In ruling that the properties of the School District and the School Authorities devoted to public school purposes are immune from these sewer assessments, the

court below was correct and its judgment must be affirmed.

## Obligation To Connect to Sewer System and Pay Connection Charges and Sewer Rentals

The court below must also be affirmed as to that part of its judgment relating to the obligation to connect the schools to the sewer system. It is urged that such connection may only be ordered when necessary for the public health and that, since it is conceded that the facilities for sewage disposal now maintained by the elementary school are "adequate", no necessity for such connection in furtherance of the public health exists. Over fifty years ago, in *Lower Merion Township v. Becker,* 42 Pa. Superior Ct. 203, a similar argument was raised and rejected. The parties hereto having stipulated that the ordinance which requires connection to the sewer system by abutters is a public health measure, the adequacy or inadequacy of the present school's sewage disposal is immaterial. The protection of the public health lies within the control of the township commissioners. There are no facts of record to justify this court to find a clear abuse of discretion or an unreasonable exercise of the police power on the part of the township commissioners in the case at bar.

Being required to connect with the sewer system, the School Districts and the School Authorities must pay the connection charges and the sewer rentals.

Judgment affirmed.