## Township of West Goshen v. Cubic Construction Co.

*Lawrence E. Wood*, for plaintiff.

*Kent & Elicker* and *Edward D. Barker*, Assistant General Counsel, for defendants.

HERMAN, J., July 31, 1969.—The Cubic Construction Company entered into a contract with The General State Authority to construct a fieldhouse-classroom building on the campus of West Chester State College in the Township of West Goshen, Chester County, and in due time began the construction.

The construction contract contained the familiar provision that:

"The Contractor shall procure all permits, licenses, and certificates, pay all taxes, charges and fees, and give all notices necessary and incident to the proper and lawful prosecution of the work."

The Township of West Goshen had and still has a building code, a zoning ordinance, and a plumbing code, all of which require the securing of a permit before any construction is begun in the township.

Neither Cubic Construction Company nor The General State Authority secured such a permit but the company, nevertheless, went ahead with the construction. Thereafter, complaints were filed by the township building inspector against Cubic charging violations of the building code and seeking a penalty of $50 per day for each day of violation, or $2371.50 to December 1, 1967, the date the action was begun. The Authority intervened and the township then discontinued the action for penalties and commenced in Chester County this suit in equity against both Cubic Construction and the Authority, seeking to enjoin further construction until Cubic had taken out the proper permits. Pursuant to Pennsylvania Rules of Civil Procedure 1503(c) and 1006(e) the case was transferred from the Chester County Court to Dauphin County.[1]

The complaint in equity alleges the facts just outlined and further incorporates by reference the ordinances referred to. The relevant part of the building code ordinance reads as follows:

---

[1] 1503(c): "An action against the head of an executive or administrative department, a departmental administrative board or commission or an independent administrative board or commission, or an officer or instrumentality of the Commonwealth may be brought in and only in Dauphin County."

1006(e): "Improper venue shall be raised by preliminary objection and if not so raised shall be waived. If a preliminary objection to venue is sustained and there is a county of proper venue within the State the action shall not be dismissed but shall be transferred to the appropriate court of that county. The costs and fees for transfer and removal of the record shall be paid by the plaintiff."

"Section 1182-B. The non-resident Commercial or Industrial building permit fee, including new structures, additions or alterations shall be according to the following schedule: (1) Floor space up to 1,000 square feet shall have a minimum rate of $35.00. (2) Floor space over 1,000 square feet shall be calculated at the rate of $20.00 per 1,000 square feet or fraction thereof."[2]

Both the Authority and Cubic Construction Company filed preliminary objections in the nature of demurrers on the grounds that The General State Authority is a governmental instrumentality and an agency of the Commonwealth and thus enjoys immunity from this type of action, and that Cubic Construction, in constructing the building in question under contract with the Authority, is likewise immune. Defendants also complain that a valid cause of action is not pleaded against defendants and that plaintiff has an adequate remedy at law.

Equity will assume and will retain jurisdiction to avoid a multiplicity of actions: White v. Young, 409 Pa. 562 (1963); Pennsylvania State Chamber of Commerce v. Torquato, 386 Pa. 306 (1956). Each day that a permit is not obtained is a separate offense and the subject of a separate action and we believe that a multiplicity of actions might result in this case if equity did not assume jurisdiction. Consequently we will retain the case in its present posture.

Plaintiff argues that the provision in the contract, quoted on page 1 of this opinion, requiring the contractor to procure all necessary permits, is in the

---

[2] Although *not strictly before* us by proper pleadings, it is stated in Cubic Construction Company's preliminary objections, and nowhere denied by plaintiff, that because of the size of the building involved the building permit fee required under the building code section quoted would be $3,975.

nature of a third party beneficiary contract made for the benefit of the township. We cannot agree.

The traditional rationale employed to justify the invocation of the third party beneficiary theory is that at the time of the formation of the contract the contracting parties specifically intended that the third party receive a legally enforceable benefit. The imposition of this theory establishes the privity, implies the exchange of promises and obligations, and creates the duty to perform. In practical terms this avoids a multiplicity of suits and allows the third party to receive the benefit others intended he should receive. The intent of the parties is the ruling consideration. A person who is only incidentally benefited may not maintain an action based on the contract: Spires v. Hanover Fire Insurance Co., 364 Pa. 52 (1950); Potato City, Inc. v. Bartlett, Secy. of Hwys., 89 Dauph. 135 (1968).

There appears to be no intent here to confer an actionable right on West Goshen. The General State Authority and Cubic did not make the contract for the benefit of West Goshen and it is the intention of the contracting parties which must govern. Provisions of the clause in question may therefore only be enforced by those parties who actually contracted and exchanged consideration.

It must also be pointed out that the clause which the township relies upon is not absolute in nature. Special attention should be given to the fact that only those permits which are *necessary* must be paid for by the contractor. The precise question before this court is whether it is *necessary* for Cubic to pay for the building permit.

West Goshen has also advanced the theory that it has an inherent right, as a local municipality, to require all persons including those who build for The General State Authority to obtain building permits

and pay the fee set by the Township. The General State Authority Act of March 31, 1949, P. L. 372, sec. 3, 71 PS §1707.3, declares the Authority to be "created a body corporate and politic, constituting a public corporation and governmental instrumentality," and section 15 provides that "the effectuation of the authorized purposes of the Authority, created under this act, shall and will be in all respects for the benefit of the people of the Commonwealth for the increase of their commerce and prosperity and for the improvement of their health and living conditions, and since the Authority will be performing essential governmental functions in effectuating such purposes, the Authority shall not be required to pay any taxes or assessments upon any property acquired or used by it for such purposes. . . ."·

Certainly it cannot be disputed that the Authority is the alter ego of the Commonwealth: U.S. Cold Storage Corporation v. Philadelphia, 427 Pa. 624 (1967): Marianelli v. General State Authority, 354 Pa. 515 (1946); General State Authority Building Designs, 81 D. & C. 326 (1952). The Authority, acting as the agent of the Commonwealth, may avail itself of the same privileges as the Commonwealth: J. L. Turner Company v. The General State Authority, 41 D. & C. 2d 118 (1966). Therefore, if the Commonwealth is not bound to pay the fee in question, neither are the defendants.

We are not faced with the problem of determining whether the Commonwealth must obey a legitimate public health ordinance. The question here is whether the Commonwealth's agents must pay a $3,975 "fee." This fee, which bears no reasonable relationship to the cost of issuing a permit, is clearly a revenue measure and as such is a tax.

Under the line of reasoning first enunciated in M'Culloch v. State of Maryland, 17 U.S. 316 (1819),

the courts have consistently held that one government instrumentality may not impose a tax on another. The power to require the payment of a tax is the power to destroy. In Collingdale Borough v. Hood & Gross, 29 D. & C. 22 (1936), the court of equity refused to grant an injunction against a Federal project. The contractors for the project had refused to pay the fee for a building permit. The opinion of the court held that the contractors could not be taxed nor required to obtain a building permit because the project was a government undertaking: Southwest Delaware County Municipal Authority v. Aston Township, 413 Pa. 526 (1964), held that even a school district is exempt from assessments and taxation.

Plaintiff relies primarily on the holding in School Dist. of Philadelphia v. Zoning Bd. of Adjustment, 417 Pa. 277 (1965). This case held that the general assembly granted the City of Philadelphia the power to regulate by zoning ordinances the amount of off street parking a school must provide for its students. However, this case dealt with conflicts between coterminous municipal bodies, but did not concern the payment of a fee. This is not persuasive of the issues in the instant case.

There is still a further reason why plaintiff cannot here prevail. The Second Class Township Code which controls the actions of the Township of West Goshen provides, in part:

"No ordinance, by-law, rule or regulation shall be adopted which in any manner restricts, interferes with, hinders or affects the operation ot any other political subdivision or instrumentality of the Commonwealth of Pennsylvania": Act of August 27, 1963, P.L. 1280, sec. 1, 53 PS §65762, amending and adding to The Second Class Township Code of May 1, 1933, P. L. 103, 53 PS §65101.

We conclude that neither the Authority nor Cubic Construction Company is here subject to the ordinances of the Township of West Goshen requiring a building permit and the payment of a permit fee, and that the preliminary objections of defendants should be sustained, and we accordingly enter the following.

### ORDER

And now, July 31, 1969, the preliminary objections of Cubic Construction Company and The General Construction Company and The General State Authority in the nature of demurrers are sustained and the complaint of plaintiff is dismissed.