The Borough of West Chester,      :
          Petitioner      :
          :
       v.      :
          :
Pennsylvania State System of      :
Higher Education and West Chester      :
University of Pennsylvania of the      :
State System of Higher Education,      :    No. 260 M.D. 2018
          Respondents      :    Argued: March 13, 2019

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: July 15, 2019

Before this Court in our original jurisdiction is the preliminary objection of the Pennsylvania State System of Higher Education (PASSHE) and West Chester University of Pennsylvania of PASSHE (the University) (collectively, Respondents) filed in response to the Borough of West Chester's (the Borough) declaratory judgment action (Declaratory Judgment Action).

On April 13, 2018, the Borough filed a Declaratory Judgment Action against Respondents in this Court's original jurisdiction, seeking to establish that the

Stormwater Charge[1] is a fee for service, rather than a tax, which Respondents are obligated to pay. Declaratory Judgment Action at 22, ¶¶ 107-10. The Borough makes the following factual allegations.

The Borough is a home rule municipality organized and existing under the laws of the Commonwealth of Pennsylvania including, without limitation, the Pennsylvania Home Rule Charter and Optional Plans Law.[2] Declaratory Judgment Action at 2, ¶ 2. Pursuant to Section 2002-A(a) of the Public School Code of 1949,[3] PASSHE is a body corporate and politic constituting a public corporation and government instrumentality, of which the University is a constituent institution. *Id.* at 2, ¶ 6. Approximately 57 acres of the University's campus is situated within the south-central portion of the Borough and is generally known as the North Campus. *Id.* at 3, ¶¶ 11-12. PASSHE, in the name of the Commonwealth of Pennsylvania, is the title owner in fee simple of a portion of the property forming the North Campus, and the University is title owner in fee simple of another portion of that property. *Id.* at 3-4, ¶¶ 13-14.

The Borough owns and operates a Small Municipal Separate Storm System (Stormwater System or MS4), as that term is defined in the Code of Federal Regulations. Declaratory Judgment Action at 7, ¶ 31 (citing 40 C.F.R. § 122.26(b)(16), (17)). The Borough maintains a National Pollutant Discharge

---

[1] The Borough refers to this charge as the Stream Protection Fee and Respondents refer to it as the Stormwater Tax. Because whether the charge is a fee or a tax is at issue in this case, we will instead utilize the neutral term "Stormwater Charge."

[2] 53 Pa.C.S. §§ 2901-2984.

[3] Act of March 10, 1949, P.L. 30, added by Section 2 of the Act of Nov. 12, 1982, P.L. 660, No. 188, *as amended*, 24 P.S. § 20-2002-A(a).

Elimination System Permit (NPDES), a prerequisite for the lawful operation of its Stormwater System. *Id.* at 7-8, ¶¶ 34-39. On July 20, 2016, the Borough Council enacted the Borough's Stream Protection Fee Ordinance (Ordinance). Declaratory Judgment Action at 4, ¶ 15; Exhibit C, Ordinance, Section 16, p. 12.[4] For purposes of determining the appropriate assessment rate for the Stormwater Charge, the Ordinance categorizes property into different tiers, ranging from tier 1 to tier 6, based on total impervious surface area. Declaratory Judgment Action at 17, ¶ 80; Exhibit C, Ordinance, Section 6, p. 7.[5] The assessment rate is determined by multiplying the base rate by the corresponding percentage amount for each tier. The Stormwater Charge is then calculated by multiplying the assessment rate by the number of base units[6] in a given property. On September 21, 2016, the Borough Council adopted Resolution No. 11-2016 in order to impose the Stormwater Charge[7] upon the owners

---

[4] "Courts reviewing preliminary objections may consider not only the facts pleaded in the complaint, but also documents or exhibits attached to the complaint . . . ." *Diess v. Dep't of Transp.*, 935 A.2d 895, 903 (Pa. Cmwlth. 2007).

[5] For example, a tier 4 property is one "where the total impervious surface area is greater than 2,000 square feet and less than or equal to 2,500 square feet." Declaratory Judgment Action at 17, ¶ 82; *see also* Ordinance, Section 6, p. 7.

[6] Each base unit is 1,000 square feet of impervious surface. Ordinance, Section 5, p. 4.

[7] The Ordinance refers to the Stormwater Charge as the "Stream Protection Fee" which is defined as follows:

> [A]n assessment levied by the Borough to cover the cost of constructing, operating, and maintaining stormwater management facilities and to fund expenses related to the Borough's compliance with [Pennsylvania Department of Environmental Protection] NPDES permit requirements under applicable state law based on the impact of stormwater runoff from impervious areas of developed land in the Borough.

Ordinance, Section 5, p. 16.

3

of all developed properties within the jurisdictional limits of the Borough that are connected to, use, or are serviced or benefit from the Stormwater System. *Declaratory Judgment Action* at 4, ¶ 17; *see also* Ordinance, Section 5, p. 5 (defining the term "developed" to include "[p]roperty where manmade changes have been made which add impervious surfaces to the property . . . ."). For purposes of calculating the Stormwater Charge, this resolution established a monthly base fee of $6.70 per 1,000 square feet of impervious cover on a given property. *Declaratory Judgment Action* at 18, ¶¶ 86-87. The Borough adopted the Stormwater Charge as the mechanism by which the Borough would raise revenue to fund pollution remediation measures.[8] *Id.* at 15-16, ¶ 73. The Borough contends that there is a direct relationship between the amount of impervious surface within a given watershed and the health and quality of the watercourse and its tributaries within that watershed, in addition to public health, safety, and welfare concerns related to flooding and other stormwater-related issues. *Id.* at 11, ¶ 50. The Borough avers that the impervious area of the portion of the North Campus that lies in the Borough covers 32 acres, constituting nearly 8% of the total impervious area within the Borough. *Id.* at 11-12, ¶¶ 51-52. The Borough further avers that stormwater which

---

[8] The Stormwater Charge is set forth in Section 94A-6.A of the Borough's Code and provides:

> For the use of, benefit by and the services rendered by the [Stormwater System], including its operation, maintenance, repair, replacement and improvement of said system and all other expenses, a stream protection fee . . . as described, defined, and calculated herein is imposed upon each and every developed property within the Borough that is connected with, uses, is serviced by or is benefitted by the Borough's [Stormwater System], either directly or indirectly, and upon the owners of such developed property as set forth herein.

*Declaratory Judgment Action* at 16 (quoting Section 94A-6.A of the Borough's Code).

4

flows from the impervious areas of the North Campus situated in the Borough either enters and flows through the Borough's Stormwater System or flows directly into a nearby watercourse. *Id.* at 12, ¶¶ 53-54.

The Borough maintains that each of the North Campus properties subject to the Stormwater Charge is "developed" for purposes of the Ordinance, and that these properties are connected with, use, are served by, or are benefitted by the Borough's Stormwater System. Declaratory Judgment Action at 17, ¶¶ 76-77. The Borough notes that the amount of the Stormwater Charge for which the owner of a developed property is responsible is dependent upon the amount of impervious surface on the property. *Id.* at 17, ¶ 78. The Borough states that the Borough Council established several impervious area property tiers, based upon the total square footage of impervious surface area, with different corresponding assessment rates for the Stormwater Charge. *Id.* at 17-18, ¶¶ 80-84. The Borough avers that all revenue generated by the Stormwater Charge is deposited into the Borough's Stormwater Management Fund, and that this money is only used for the purposes set forth in the Ordinance, which include funding pollution remediation measures to comply with state and federal regulatory requirements. *Id.* at 18-19, ¶¶ 88-89.

Counsel for PASSHE informed the Borough by letter dated January 18, 2018 that the University would not pay the Stormwater Charge. Declaratory Judgment Action at 5, ¶¶ 20-21. Through letters sent on February 23, 2018, and March 5, 2018, the Borough rejected PASSHE's and the University's refusal to pay the Stormwater Charge. *Id.* at 5, ¶¶ 22-24. The Borough sent PASSHE Stormwater Charge invoices listing the aggregate amount due for 2017 as $105,760.85. *Id.* at 19, ¶¶ 91-92. The Borough sent the University Stormwater Charge invoices indicating a total amount due of $5,855.81 for 2017. *Id.* at 19-20, ¶¶ 93-94.

Respondents missed the deadline for payment of the 2017 Stormwater Charge. *Id.* at 20, ¶ 96. The Borough avers that Respondents owe similar amounts for the 2018 Stormwater Charge, which they also declined to pay. *Id.* at 20-21, ¶¶ 99-102. The Borough does not dispute that PASSHE and the University are immune to local taxation, but alleges that the Stormwater Charge is a fee for service, rather than a tax. *Id.* at 22, ¶¶ 106-07.

Respondents filed a preliminary objection in the nature of a demurrer, alleging that the Borough's pleading is legally insufficient pursuant to Pennsylvania Rule of Civil Procedure No. 1028(a)(4) because the Stormwater Charge is not a fee for service, but rather a tax from which they are immune as Commonwealth entities. Preliminary Objection to the Borough's Declaratory Judgment Action (Preliminary Objection) at 4-5, ¶¶ 15-25. Respondents assert that "[t]he [Stormwater Charge] is a form of real estate tax—a payment by a property owner assessed based on a condition of the subject property." *Id.* at 6, ¶ 22. Respondents contend that the Stormwater Charge is a tax, because it compels the payment of money in order to generally aid the environment without providing any special benefit to Commonwealth property. *Id.* at 6, ¶ 23. Respondents also assert that even if the Stormwater Charge is considered an assessment rather than a general tax because it is limited to stormwater infrastructure projects, it is still a tax subject to the Commonwealth's tax immunity. *Id.* at 6, ¶ 24. Respondents additionally contend that the Stormwater Charge is not reasonably proportional to the value of any product or service provided to the Commonwealth in a quasi-private capacity, such as the provision of gas or garbage collection. *Id.* at 6-7, ¶ 26 (citing *Supervisors of Manheim Twp., Lancaster Cty. v. Workman*, 38 A.2d 273, 276 (Pa. 1944)). Respondents maintain that "[t]he authority to levy any kind of tax or charge against

6

a Commonwealth entity must be made expressly." *Id.* at 7, ¶ 29 (citing *Sw. Del. Cty. Mun. Auth. v. Aston Twp.*, 198 A.2d 867, 872 (Pa. 1964)). Respondents assert that although the Ordinance identifies two possible sources of the Borough's authority under state law—the Storm Water Management Act (SWMA)[9] and The Clean Streams Law[10]—neither authorizes the Borough to impose any tax, assessment or fee upon a Commonwealth entity to raise revenue to comply with the Borough's obligations. *Id.* at 8-9, ¶¶ 31 & 34.

In response, the Borough asserts that the Stormwater Charge is a fee for service imposed on Respondents by authority of Section 2961 of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2961. Borough's Response to Respondents' Preliminary Objections (Borough's Response) at 13 & 16-17, ¶¶ 22 & 28. The Borough further contends that the Stormwater Charge is reasonably proportional to the value of the service provided to Respondents, *id.* at 16, ¶ 27, and that Respondents are not the equivalent of the Commonwealth and enjoy only qualified immunity from taxation. *Id.* at 2, ¶ 17 (citing *Pa. State Sys. of Higher Educ. v. Indiana Area Sch. Dist.* (Pa. Cmwlth., No. 184 M.D. 2011, filed April 5, 2012), slip op. at 15). Further, the Borough maintains that Respondents realize a special benefit from the Borough's Stormwater System. Borough's Response at 14, ¶ 23.

In their brief in support of their preliminary objection, Respondents note that "[a]n assessment is defined as a type of charge that 'pays for a public, though a local, improvement' and 'therefore relieves the public from the necessity of contributing to the cost or expense of the improvement.'" Respondents' Brief at

___

[9] Act of October 4, 1978, P.L. 864, *as amended*, 35 P.S. §§ 680.1 – 680.17.

[10] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1 – 691.1001.

10 (quoting *Sw. Del. Cty. Mun. Auth.*, 198 A.2d at 870). Respondents assert that the fact that the Stormwater Charge is dedicated to a particular purpose indicates that it is an assessment, which is still a species of tax subject to the Commonwealth's tax immunity. *Id.* at 11. Respondents contend that the Stormwater Charge resembles the sewer assessment in *Southwest Delaware County Municipal Authority*, in which a municipal authority attempted to assess a public school to cover the cost of installing a sewer system. *Id.* at 11. Respondents note that the Pennsylvania Supreme Court found in that case that the school district and the school authorities were immune from the sewer assessments, even though they benefited from the sewer construction. *Id.* at 11 (citing *Sw. Del. Cty. Mun. Auth.*, 198 A.2d at 869 & 874). Respondents therefore maintain that the fact that they might benefit from the Borough's Stormwater System does not preclude a finding that the Stormwater Charge is a tax or an assessment, rather than a fee. *Id.* at 11-12. Respondents also point out that "[t]he Borough does not allege that it will make improvements to, or even touch, property owned by" Respondents. *Id.* Respondents further contend that they are equivalent to the Commonwealth and entitled to tax immunity. *Id.* at 10. Respondents note that "[a]s a general rule, political subdivisions like a borough cannot levy taxes on real property unless the . . . General Assembly has granted taxing authority to the subdivision." *Id.* at 6 (citing *Lehigh-Northampton Airport Auth. v. Lehigh Cty. Bd. of Assessment Appeals*, 889 A.2d 1168, 1175 (Pa. 2005)). Respondents also assert that "political subdivisions like the Borough do not have general authority to compel payment from Commonwealth entities" and that "[t]he authority to levy any kind of tax or charge against a Commonwealth entity must be made expressly" by the General Assembly. *Id.* at 15-16 (citing *Lehigh-Northampton Airport Auth.*, 889 A.2d at 1175; *Del. Cty. Solid Waste Auth. v. Berks Cty. Bd. of*

8

*Assessment Appeals*, 626 A.2d 528, 530 (Pa. 1993)); *Sw. Del. Cty. Mun. Auth.*, 198 A.2d at 872.[11]

In its brief in opposition to Respondents' preliminary objection, the Borough argues that the Stormwater Charge is a fee for service. Borough's Brief in Opposition to Respondents' Preliminary Objection at 16. The Borough contends that it has the authority to impose the Stormwater Charge pursuant to its home rule charter and asserts that Respondents fail to point to any provision of the home rule charter, statutes or the Pennsylvania Constitution that would limit the Borough's power to impose the Stormwater Charge. *Id.* at 20. The Borough notes that a municipality may charge a fee for service when performing certain functions in a proprietary or quasi-private capacity, but only if that fee is reasonably proportional to the value of the service received. *Id.* at 16-17 (citing *Workman*, 38 A.2d at 276). The Borough further argues that the Stormwater Charge is a fee, because it is "imposed as a charge for services which a municipality renders 'to particular persons or groups of persons within the' municipality[,]" and asserts that the Stormwater Charge is not a general revenue generating measure. *Id.* at 14 & 16-17. The Borough contends that its Stormwater System benefits property owners, because they "do not have to incur the expense which would otherwise be necessary to maintain on their own properties the scope of systems which would be necessary to" manage stormwater. *Id.* The Borough also asserts that "the amount of [the Stormwater Charge] which the owner of a given [d]eveloped [p]roperty must pay is directly related to the amount of impervious cover at that . . . [p]roperty." *Id.* at 18.

In ruling on preliminary objections,

---

[11] We note that the cases cited by Respondents pertain to tax immunity and do not state that Commonwealth entities are immune from "charges" imposed by municipalities. *See Sw. Del. Cty. Mun. Auth.*, 198 A.2d at 872.

9

> our review is limited to the pleadings. . . . We are required to accept as true the well-pled averments set forth in the . . . complaint, and all inferences reasonably deducible therefrom. . . . Moreover, the court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. . . .

*Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 415-16 (Pa. Cmwlth. 2006) (citations omitted).[12] A preliminary objection to the legal sufficiency of a pleading, commonly known as a demurrer, raises questions of law, and we "must decide whether it is clear from the well-pleaded facts and reasonable inferences from those facts that the claimant has not established a right to relief." *Yocum v. Pa. Gaming Control Bd.*, 161 A.3d 228, 233-34 (Pa. 2017) (emphasis added). "Preliminary objections in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted." *Id.* at 234. "[T]he question presented by [a] demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Bilt–Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005).

In *PPL Electric Utilities Corporation v. City of Lancaster*, 125 A.3d 837 (Pa. Cmwlth. 2015), we considered a public utility corporation's application for summary relief following its declaratory judgment action asking this Court to declare invalid an annual right-of-way maintenance fee imposed on the public utility

---

[12] Courts reviewing preliminary objections may also consider documents and exhibits attached to the complaint. *See supra* note 4.

by a city. *Id.* at 844.[13] Noting that, as a home rule municipality, the city could "assess fees for recovery of costs under its home rule powers" and "undertake government action unless preempted by a law of statewide applicability," we identified the central issue as "whether the fee is reasonable and not a tax." *Id.* at 851-52. We denied summary relief, reasoning that "[t]his issue [could not] be determined at this summary stage of the proceedings and may require further factual development[.]" *Id.* at 852. Similarly, here, whether the Borough has established a right to declaratory relief depends on whether the Stormwater Charge constitutes a tax or a fee—a question necessitating further factual development. For example, questions remain, *inter alia*, as to: whether the Borough's Stormwater System provides a discrete benefit to Respondents, as opposed to generally aiding the environment and the public at large; whether the value of the Stormwater System to Respondents is reasonably proportional to the amount of the Stormwater Charge; and, apart from general operation, maintenance and repair of the Borough's Stormwater System, how exactly does the Borough utilize the funds generated by the Stormwater Charge.

Based on the present facts as averred and reasonable inferences therefrom, it is not certain that the law precludes the Borough's requested declaratory relief. *See Bilt–Rite Contractors, Inc.*, 866 A.2d at 274. Further factual development and the resolution of pending questions may enable the Borough to establish that the Stormwater Charge constitutes a fee for service that is reasonably proportional to the value of the benefit conferred to Respondents in a quasi-private capacity. Thus, the Borough has not "clearly and without a doubt failed to state a claim for which relief may be granted." *Yocum*, 161 A.3d at 234. As settling the

---

[13] Prior to this point, we had also overruled the City's preliminary objection in the nature of a demurrer. *PPL Elec. Utils.*, 125 A.3d at 843.

11

question of law presented by the Borough's request requires further factual development, we therefore conclude that it would be premature to sustain Respondents' demurrer. *See McNeill by McNeill v. City of Philadelphia*, 522 A.2d 174, 178-79 (Pa. Cmwlth. 1987) (holding that the trial court's decision to sustain a demurrer was premature where questions of law could not be settled without "amplification of the factual record"). Accordingly, we overrule Respondents' preliminary objection.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Borough of West Chester,<br>               Petitioner | : |
| | : |
| | : |
|         v. | : |
| | : |
| Pennsylvania State System of<br>Higher Education and West Chester<br>University of Pennsylvania of the<br>State System of Higher Education,<br>               Respondents | :<br>:<br>:<br>:    No. 260 M.D. 2018<br>: |

## O R D E R

AND NOW, this 15th day of July, 2019, the preliminary objection of the Pennsylvania State System of Higher Education (PASSHE) and West Chester University of PASSHE (collectively, Respondents) is OVERRULED. Respondents shall file an answer to the Borough of West Chester's declaratory judgment action within thirty (30) days of the date of this order.

_____
CHRISTINE FIZZANO CANNON, Judge